Chief Judge Fuld.
The plaintiff, a used car dealer, brought the present civil action, alleging that the defendant Wapnick, in concert with several others, had fraudulently sold him 17 stolen automobiles. When Wapnick was examined before trial, he refused to answer questions concerning his participation in the sale of the stolen vehicles on the ground that the answers would tend to incriminate him. The primary question posed by this appeal is whether he had previously waived his right *357 to do so by virtue of statements he had earlier made in another connection.
In 1961, when Wapniek asserted his privilege, twb indictments, charging him with activities similar to those alleged in the complaint, were pending against him—one in a Federal court and another in Queens County.[1] Pointing to Wapnick’s refusal to respond to questions at that examination before trial, the plaintiff sought an order, under section 299 of the former Civil Practice Act (superseded by CPLB 3126), striking the defendant’s answer and awarding the plaintiff judgment by default. The court at Special Term granted that motion and entered a judgment in favor of the plaintiff and against Wapnick for $33,925, the total amount demanded in the complaint. Following the Appellate Division’s affirmance of that disposition, the defendant appealed to .this court on constitutional grounds.[2]
The present suit was originally instituted in July of 1959, when the plaintiff obtained an order for Wapnick’s arrest. Shortly after that order had been executed, the defendant served a verified answer, denying allegations of the complaint, and moved at Special Term to vacate the arrest order. In support of that motion, and of a similar motion made the following year, the defendant submitted four affidavits, containing challenges to the sufficiency of the plaintiff’s case and generally denying any knowledge of the fraudulent transactions charged against him. These affidavits, plus the denials in the defendant’s answer, form the basis for the plaintiff’s argument that the defendant had waived his privilege at the examination before trial.
*358 Although the defendant declined to answer, on constitutional grounds, 42 questions addressed to him at that examination, the plaintiff claims that he had waived the privilege by reason of statements which the plaintiff says related to nine of them. As to four of those statements, however, the plaintiff merely points to implied “ admissions,” that is, admissions resulting from the defendant’s failure to deny allegations of the complaint. Such an argument is specious. Certainly, one does not waive his constitutional privilege, his right to remain silent, by simply remaining silent. Stated somewhat differently, the mere failure to deny an allegation in a complaint, or to deny any other assertion, can never serve as a predicate for a claim of waiver.
This leaves five questions, put to the defendant, upon which the plaintiff relies to support his claim. However, comparison of them with the statements in the defendant’s papers demonstrates that the defendant had said nothing which could reasonably be deemed to have effected a waiver of his privilege.[3]
As to the first of these questions — ‘1 Are you in business at the present time? ” — it is apparent that the defendant’s state *359 ment dealt with a completely different issue, namely, the defendant’s reputation, and does not indicate whether or not he was engaged in business at the time the question was asked. Similarly, although the last question (No. 5) related solely to the defendant’s actual knowledge of certain payments, the statement quoted was merely the defendant’s argument as to possible implications which might have been drawn from the guarantee of title; it casts no light on whether any payments were made or, if they were, whether the defendant was notified of that fact. Thus, there are only three questions — designated Nos. 2, 3 and 4 — Which may be said to have been touched on by the defendant’s earlier statements.
Proceeding to them, it appears that, as to two of those three (Nos. 3 and 4), the plaintiff relies on the defendant’s statement in which he generally denies any participation in fraudulent transactions. Unless this denial of wrongdoing is sufficient to constitute a waiver of the privilege, but a single question remains (No. 2) out of the 42 which the defendant refused to answer, concerning which there was an actual and direct admission in the defendant’s sworn statements. The fact that the defendant had, in effect, given an answer to this one question— “ Do you know the plaintiff, Mr. Steinbrecher? ”—by stating that he had dealt with him in a completely unrelated transaction, cannot possibly be deemed sufficient to support the claim of waiver of the privilege and entry of a default judgment (of *360 over $33,000). Accordingly, the question whether the dismissal of the answer was justified hinges upon the effect of the defendant’s statement—made in connection with his application to vacate the order of arrest — that, “if the facts charged by plaintiff are true with respect to the co-defendants herein, I had no knowledge of or connection with the fraudulent acts charged to them.” In our view, this general denial of guilt — made under circumstances completely removed from and independent of the examination before trial—did not constitute a waiver of the defendant’s right to assert his privilege in the latter proceeding.
In determining whether a person, by his previous acts or statements, has waived his privilege against self incrimination, the first important distinction to keep in mind is the difference between the privilege accorded an accused in a criminal case, who need not give any testimonial evidence whatsoever, and the privilege accorded the ordinary witness — including a party in a civil case—who may be compelled to testify as to any matter which does not actually tend to incriminate him. In the former case, where the scope of the privilege is the most sweeping, the courts have traditionally been more ready to find that there was a waiver. Thus, a defendant in a criminal prosecution who testifies at his trial may be compelled to answer questions as to all matters relevant to the case. (See, e.g., People v. Johnston, 228 N. Y. 332, 340; see, also, Richardson, Evidence [Prince’s 9th ed.], § 533, pp. 543-544.)
On the other hand, an ordinary witness, including a party in a civil suit, does not waive his privilege by the mere act of testifying. The rule, as stated by the Supreme Court, is that, ‘ ‘ where the previous disclosure by an ordinary witness is not an actual admission of guilt or incriminating facts, he is not *361 deprived of the privilege of stopping short in his testimony whenever it may fairly tend to incriminate him. ’ ’ (McCarthy v. Arndstein, 262 U. S. 355, 359; see, also, e.g., Rogers v. United States, 340 U. S. 367, 373; People ex rel. Taylor v. Forbes, 143 N. Y. 219, 229-231; Matter of Siegel v. Crawford, 292 N. Y. 651, affg. 266 App. Div. 878; Foster v. People, 18 Mich. 266, 274; 8 Wigmore, Evidence [McNaughton’s rev. ed., 1961], § 2276, pp. 456-458.)
The differentiation which has thus been drawn between a criminal defendant and a party in a civil suit (or any other witness) stems from the nature of the privilege itself. • The civil litigant (or the witness) may not refuse to .answer a question unless the answer to it would have an incriminating effect. If he is interrogated about a certain event, and can answer the query in a nonincriminatory manner, he has no choice but to do so. Nevertheless, the answers to other questions, relating to the very same transaction, may still have an incriminating effect and, despite his previous testimony, the privilege must still be accorded the witness. However, if a nonincriminating statement were held to open the door to further inquiry, and thus required the witness to later make incriminating statements, he would have to be accorded the privilege of asserting his right to remain silent and of keeping the door closed at an earlier stage. In other words, if the privilege is deemed waived by a nonincriminatory .statement, then, the scope and reach of the privilege would have to be expanded to include the right to refuse to make such a statement. (See 8 Wigmore, Evidence [McNaughton’s rev. ed., 1961], p. 457; Note, Waiver of the Privilege Against Self Incrimination, 14 Stan. L. Rev. 811, 816-817, n. 23.)
In order to preserve the rule that a witness must respond to questions if the answers are not incriminating, therefore, the principle has been established that, even where the witness has already given testimony as to a particular transaction, he is still entitled to refuse to answer questions unless it is “ perfectly clear and plain * * * that the answer cannot possibly injure him, or tend in any degree to subject him to the peril of prosecution.” (People ex rel. Taylor v. Forbes, 143 N. Y. 219, 231, supra.) This rule applies unless the defendant has actually waived—that is, consciously relinquished — the right to remain *362 silent either by an express agreement or by voluntarily making a statement that is actually incriminatory and evidences a willingness, to forego his constitutional privilege.
The application of this principle is illustrated by this court’s decision in Matter of Siegel v. Crawford (292 N. Y. 651, affg. 266 App. Div. 878, supra), a case very similar to the one now before us. In Siegel, an insurance agent had been sued for making false and fraudulent “ comparisons ” between insurance policies, an act which subjected him to criminal as well as civil penalties (Insurance Law, § 127, subd. 4). At an examination before trial, the defendant admitted that his employees had dealt with the plaintiff but denied any personal knowledge of the transactions. Later, m the very same examination, he refused to answer questions, relating to the comparisons made for the plaintiff, on constitutional grounds. Unlike the present plaintiff, who, in a similar situation, moved directly to dismiss the answer, the plaintiff in that case sought and obtained a court order directing the defendant to respond. When the latter persisted in his refusal, the court cited him for contempt and the defendant brought an article 78 proceeding in the Appellate Division to review the determination. The Appellate Division annulled the contempt order on the ground that ‘ ‘ the Justice had no power to deprive the witness, of his. privilege ” (266 App. Div., at p. 879) and, on appeal, this court affirmed (292 N. Y. 651). The plaintiff in the Siegel case had argued that, since the defendant had previously denied any personal involvement in the transactions but had acknowledged their existence, he was no longer entitled to claim the privilege. This court rejected that argument, and held that, so long as the answer to the question could still have a possible incriminating effect, the defendant could not be compelled to speak.
There is. one important exception to the general rule that a witness is free to rely on the privilege unless he has waived it by voluntarily testifying to incriminating facts. Since the sole purpose of the privilege is to shield a witness against the incriminating effects of his testimony, the courts will not permit its use as a weapon to unfairly prejudice an adversary. (See Levine v. Bornstein, 6 N Y 2d 892; Brown v. United States, 356 U. S. 148, 155-156.) In the Levine case (6 N Y 2d 892, supra), the privilege was invoked by a plaintiff at an examination before trial in a *363 civil suit, with the effect of depriving the defendant of information necessary to his defense. For this reason, our court upheld an order dismissing the complaint. The considerations which motivated the court in the Levine case, however, have no application where the privilege is asserted by a defendant. (See 3 Weinstein-Korn-Miller, N. Y. Civ. Prac., § 3126.15.)[4]
The case of Brown v. United States (356 U. S. 148, supra) — upon which the plaintiff herein relies — is another example of a situation in which a civil litigant abused the privilege by using it as a means of gaining an unfair advantage over his adversary. In that ease, a defendant in a denaturalization proceeding had testified extensively on her own behalf and then sought to use the privilege to cut off the Government’s right to cross-examine her. The Supreme Court concluded that it was appropriate to use the contempt power to compel the witness to respond. However, the Supreme Court restated and reaffirmed that, as a general rule, a witness retains his right to invoke the privilege unless his previous testimony contains “ ‘ an admission of guilt or furnish[es] clear proof of crime ’ ” (356 U. S., at p. 154). It noted, though, that, when a civil litigant takes the stand in his own behalf, his position was somewhat analogous to a criminal defendant in that he was not forced to testify and is doing so solely as a matter of choice. In such a case, the court noted that “ [t]he witness himself, certainly if he is a party, determines the area of disclosure and therefore of inquiry” (356 U. S., at p. 155) and concluded that the defendant “ could not take the stand to testify in her own 'behalf and also claim the right to be free from cross-examination on matters raised by her own testimony on direct examination ” (p. 156).
The reasoning underlying the decision in Brown is, quite obviously, completely inapposite to the case before us. This is *364 not a case in which the defendant voluntarily chose to take the stand at a trial and present the jury with a one-sided view of the facts in order to gain an advantage over his adversary. On the contrary, the privilege was exercised at an examination before trial, at which the defendant had no choice but to appear and face questions chosen by his opponent solely for the latter’s benefit. Nor is it relevant that, on a previous occasion and for an entirely unrelated purpose, the defendant had made certain statements. It is true that the affidavits executed by the defendant were in support of his own motion but the purpose of that motion was purely defensive ■—to vacate an ex parte order previously obtained by the plaintiff. It was the latter who approached the court with an extensive exposition of the defendant’s illegal activities and the defendant, in his own papers, was merely denying allegations already made. The essential fact is that at no time did the defendant ever attempt to use the privilege as a device to foreclose examination into facts which he himself had put in issue.
In People v. Cassidy (213 N. Y. 388), the court expressed the view, somewhat similar to that expressed by the Supreme Court in Brown (356 U. S. 148, supra), that a witness, after giving testimony to his own advantage, could not ‘ ‘ at the same time and in the same proceeding * * * refuse to answer questions that are to his disadvantage or the disadvantage of his friends ” (213 N. Y., at p. 394). The court emphasized, however, that even the accused in a criminal case, against whom the doctrine of waiver has been given its broadest application, may freely testify “ ‘ before a coroner’s inquest or a grand jury or other preliminary and separate proceeding ’ ” and the resulting testimony would not constitute a “ ‘ waiver for the main trial ’ ”. (People v. Cassidy, 213 N. Y., atp. 396; see, also, United States v. Miranti, 253 F. 2d 135,140 [testimony at an early stage of a Grand Jury investigation was not a waiver at a later stage of the same investigation]; People v. Williams, 25 Ill. 2d 562, 565 [testimony given in support of a motion to suppress did not waive privilege on issue of guilt]; 8 Wigmore, Evidence [McNaughton’s rev. ed., 1961], § 2276, pp. 470-472, and cases there cited.)
The plaintiff does not, indeed could not, argue' that he was prejudiced in any way by the recitals in the defendant’s affidavits, despite the subsequent exercise of the privilege at the *365 examination before trial. The affidavits were addressed solely to the court at Special Term on the narrow question of the propriety of the provisional remedy of arrest and that court, in making its determination—adversely, we might add, to the defendant—was provided with a full and fair exposition of all of the facts by both sides. Although any information which the defendant revealed would constitute an admission and could be used against him at the trial of the action, he could not, of course, use them on his own behalf. If anything, therefore, the statements made in Wapnick’s affidavits inured to the benefit of the plaintiff and there was simply no possibility that the defendant’s later exercise of his privilege would result in any unfair advantage to him.
Not only has the plaintiff failed to show any prejudice which resulted from the exercise of the privilege but it is likely that he would have gained a substantial advantage even if the answer had not been stricken. When a defendant fails to present evidence on his own behalf in a civil case — and, as we have noted, the affidavits executed by Wapnick could not be used by him as evidence •—but chooses instead to assert his constitutional privilege, he places himself at an obvious disadvantage. Moreover, we have only recently held that the courts need not permit a defendant to avoid this difficulty by .staying the civil action until a pending criminal prosecution has been terminated. (See Langemyr v. Campbell, 21 N Y 2d 796; cf. Oleshko v. New York State Liq. Auth., 21 N Y 2d 778.) The fact that a defendant in a civil suit assumes a substantial risk when he chooses to assert his privilege does not, however, mean that the plaintiff is relieved of his obligation to prove a case before he becomes entitled to a judgment.
In the present case, the plaintiff is asking us to sustain a civil judgment in excess of $33,000’ which he has obtained without the necessity of introducing any evidence in support of his claim. The sole reason given is the defendant’s broad and general denial of guilt in papers which could not be used as evidence against the plaintiff or prejudice him in any way but which, the plaintiff asserts, deprived the defendant of his-fundamental constitutional privilege against self incrimination. Such a result is hardly necessary to protect the plaintiff’s legitimate interests and would amount to nothing more than the imposition of -a civil forfeiture *366 for the good faith exercise of a constitutional right. (See Gardner v. Broderick, 392 U. S. 273, 279; Spevack v. Klein, 385 U. S. 511, 515; Griffin v. California, 380 U. S. 609, 614.)
We conclude, therefore, that the defendant’s answer must be reinstated and the default judgment entered against him vacated. However, since the indictments, which had been pending against the defendant when the plaintiff sought to examine him before trial, have been tried and disposed of and since, by reason of that fact, the defendant would not now be entitled to assert his privilege if asked the questions previously put to him, the plaintiff should be permitted to examine the defendant before trial on the issues raised by the pleadings.
The order appealed from should be reversed, with costs, and the answer of the defendant reinstated.

. Those indictments have since been disposed of — that in the Federal court, where he was tried jointly with 16 other defendants, by his conviction and that in Queens by his acquittal.
A third indictment, involving the same transaction alleged in the complaint in the case before us, had previously resulted in Wapnick’s acquittal; in the trial of that case, the plaintiff herein had acted as the principal witness for the prosecution.

. There has been, as noted in the dissenting opinion (p. 368), a long delay between entry of the default judgment against the defendant (following the striking of his answer) and the prosecution of this appeal. It would, of course, be most unfair to fault the defendant — appearing pro se — for such delay since, in large part, it was attributable to his imprisonment on the Federal charge to which we have previously referred.

. The five questions and the statements in the defendant’s affidavits relied upon 'by the plaintiff-—-and quoted in his brief—-are set forth below:
Questions at Examination Before
Trial to which-Defendant Claimed Statements Made by Defendant Prior to Privilege Examination Before Trial
(1) Q. “Are you in business at the present time?”
(2) Q. “Mr. Wapniek, do you know the plaintiff, Mr. Steinbrecher ? ”
“ [Pjlaintiff ** * * knows that I am a responsible businessman of unblemished reputation ”.
“ This is the heart * * * of plaintiff’s claim, which he has made against me, a person whom I think I may modestly describe as a reputable businessman of unblemished reputation.”
“As a matter of fact, on April 6, 1959 * * *, I had occasion to see plaintiff about a cheek of his which had been dishonored by his bank, and obtained from him a substitute cheek therefor.”
“I pointed out in my prior affidavit the business transaction I had with plaintiff on April 6th, 1959, involving a cheek which had come into my possession.” *359 (3) Q. “ Did you ever have any business dealings with Mr. Robert Ezersky? ”
(4) Q. “During 1959 did you have any dealings -with Mr. Roy concerning automobiles? ”
“ Moreover, as far as it suggests that my 'financing of the seller and other defendants’ establishes a personal connection to fraud, it draws inferences which are wholly unwarranted. I have asserted, and I repeat, that if the facts charged by plaintiff are true with respect to the co-defendants herein, I •have no knowledge of or connection with the fraudulent acts charged to them. I acted in perfectly good faith, advancing money in reliance that the transactions were bonafide.” Statement quoted above as to Mr. Ezersky. *360 (5) Q. “Do you know whether or not Mr. Ezersky received any money from Mr. Steinbreeher for automobiles sold to him? ”
“ With respect to the instrument signed by me dated July 2nd, 1959 [a guarantee of title], far from supporting the view that I had knowledge of the infirmity of title in defendant Ezersky, plaintiff’s transferor, it provides the utmost certainty that I had no reason to believe that any ears plaintiff received were not lawfully and properly acquired and sold to him.”

. This distinction was noted by Professor (now Judge) Weinstein and his colleagues in their work on the CPLR (loc. cit.): “ Where a plaintiff refuses to answer questions upon an examination before trial on grounds -of constitutional privilege, the court has found inherent * * * power to strike out the plaintiff’s complaint and dismiss the action. As one court put it, a party may not ‘ use the privilege as an instrument of attack.’ [Levine v. Bornstein, 13 Misc 2d 161,164, affd. 7 A D 2d 995, affd. 6 N Y 2d 892.] This practice is reasonable since it is plaintiff who has asked for a change in the status quo and he has an obligation to reveal the information needed for decision. Where, however, a defendant pleads his privilege the courts have recognized that he is involuntarily in court and that the plea of privilege should not be made the basis for a penalty.” (Emphasis supplied.)