JOSEPH L. MAHNE, PLAINTIFF-RESPONDENT, v. GRANGE R. MAHNE AND ROLF HABERMANN, DEFENDANTS-APPELLANTS.

Argued September 10, 1974—Decided November 19, 1974.

*Mr. Gerald W. Kolba* argued the cause for the appellant Grange R. Mahne.

*Mr. Richard H. Singer, Jr.* argued the cause for the appellant Rolf Habermann (*Messrs. Skoloff & Wolfe,* attorneys; *Mr. Michael R. Fink,* on the brief).

*Mr. Edward S. Snyder* argued the cause for the respondent.

The opinion of the Court was delivered by

JACOBS, J. The plaintiff Joseph L. Mahne filed a divorce complaint charging that his wife defendant Grange R. Mahne had committed adultery with the defendant Rolf Habermann. In her answer the defendant Grange denied the adultery and in her counterclaim she sought a divorce grounded on extreme cruelty. The defendant Rolf intervened

and in his answer denied the adultery. Thereafter the plaintiff served interrogatories in which he inquired, *inter alia,* whether the defendant Grange ever had sexual relations with the defendant Rolf. The defendants refused to answer, claiming the privilege against self-incrimination. Thereupon the plaintiff moved to strike the pleadings filed by the defendants and the motion was granted. 124 *N. J. Super.* 23 (1973). The defendants appealed to the Appellate Division and, passing the failure to obtain leave under *R.* 2:2–4, we granted certification before argument there. 64 *N. J.* 326 (1973). Apparently there were fruitless reconciliation efforts which are discussed in the briefs but are not pertinent to the single issue before us for determination, namely, whether the striking of their pleadings was a constitutionally permissible and legally proper sanction for the defendants' refusal to answer the submitted interrogatories in the circumstances at hand.

■ ■ New Jersey's statutes declare that adultery and fornication are misdemeanors. *N. J. S. A.* 2A:88–1; *N. J. S. A.* 2A:110–1; see *State v. Lutz,* 57 *N. J.* 314 (1971); *State v. Clark,* 58 *N. J.* 72 (1971). Accordingly the defendants could properly claim the privilege against self-incrimination when asked in effect by the pretrial interrogatories whether they had committed adultery or fornication. *Cf. Marsh v. Marsh,* 16 *N. J. Eq.* 391, 397 (*Ch.* 1863); *Bednarik v. Bednarik,* 18 *N. J. Misc.* 633, 643 (*Ch.* 1940). Our rules provide only for pretrial discovery of matters "not privileged" (*R.* 4:10–2) and though the privilege may be waived we believe that the mere filing of their pleadings by the defendants is not fairly to be viewed as having effectuated a waiver. See *Schermerhorn v. Contardi,* 10 *Wash. App.* 736, 520 *P.* 2d 188 (1974); *Southbridge Finishing Co. v. Golding,* 208 *Misc.* 846, 143 *N. Y. S.* 2d 911 (*Sup. Ct.* 1955), *aff'd,* 2 *App. Div.* 2d 882, 157 *N. Y. S.* 2d 898 (1956); see also *Magowan v. Magowan,* 39 *Misc.* 2d 983, 242 *N. Y. S.* 2d 336 (*Sup. Ct.* 1963); *David Webb, Inc. v. Rosenstiel,* 66 *Misc.* 2d 29, 319 *N. Y. S.* 2d 877, 880 (*Sup. Ct.* 1970), *aff'd,*

36 *App. Div. 2d* 691, 318 *N. Y. S. 2d* 441 (1971); *cf. Evid. R.* 25(d); *N. J. S. A.* 2A:84A–19. It must be borne in mind that the pleadings did not in anywise acknowledge the alleged criminal conduct but on the contrary specifically denied it. See *Arndstein v. McCarthy,* 254 *U. S.* 71, 41 S. Ct. 26, 65 *L. Ed.* 138 (1920); *cf. Brown v. United States,* 356 *U. S.* 148, 78 S. Ct. 622, 2 *L. Ed. 2d* 589 (1958); *Steinbrecher v. Wapnick,* 24 *N. Y. 2d* 354, 359–365, 300 *N. Y. S. 2d* 555, 561–566, 248 *N. E. 2d* 419, 424–427 (1969).

In the light of the foregoing it is evident that the defendants could not have been directed to answer the interrogatories nor could they have been fined or imprisoned for their refusal to do so. The trial judge recognized all this and took no such prohibited action. His position was that although the defendants could not be compelled to answer they could, without infringing on their privilege against self-incrimination, justly and lawfully be subjected to noncriminal sanctions; he chose the sanction of striking their pleadings as the necessary and appropriate one in the circumstances. While we agree that noncriminal sanctions were permissible we reject his choice of sanction. See Kaminsky, "Preventing Unfair Use of the Privilege Against Self-Incrimination in Private Civil Litigation: A Critical Analysis," 39 *Brooklyn L. Rev.* 121 (1972); Madsen, "Penalizing the Civil Litigant Who Invokes the Privilege Against Self-Incrimination," 24 *U. Fla. L. Rev.* 541 (1972); Note, "Use of the Privilege Against Self-Incrimination in Civil Litigation," 52 *Va. L. Rev.* 322 (1966); *cf. Levin v. Levin,* 129 *N. J. Super.* 142 (*App. Div.* 1974); *Duratron Corp. v. Republic Stuyvesant Corp.,* 95 *N. J. Super.* 527 (*App. Div.*), certif. den. 50 *N. J.* 404 (1967).

The defendants contend that since they were merely exercising their constitutional privilege in declining to answer the interrogatories any sanction imposed on them would amount to an impermissible burden, citing Supreme Court cases such as *Garrity v. New Jersey,* 385 *U. S.* 493, 87 S. Ct. 616, 17 *L. Ed. 2d* 562 (1967) and *Spevack v. Klein,* 385

*U. S.* 511, 87 S. Ct. 625, 17 *L. Ed. 2d* 574 (1967). *Garrity* and *Spevack* did suggest expansively that no sanctions which make exercise of the privilege costly may be imposed, but neither case arose in the present context of private litigation between private parties in which noncriminal sanctions are imposed in aid of orderly pretrial discovery. See *Duratron Corp. v. Republic Stuyvesant Corp., supra,* 95 *N. J. Super.* at 532–533; *Kaye v. Newhall,* 356 *Mass.* 300, 249 *N. E. 2d* 583, 586 (1969); *cf. Minor v. Minor,* 232 *So. 2d* 746 *(Fla. Dist. Ct. App.), aff'd,* 240 *So. 2d* 301 *(Fla. Sup. Ct.* 1970). Furthermore, Supreme Court cases since *Garrity* and *Spevack* have not embraced their expansive approach but have sought to strike suitable balances designed to protect the pertinent public and private interests without impairing the historic designs of the privilege. See *Gardner v. Broderick,* 392 *U. S.* 273, 88 S. Ct. 1913, 20 *L. Ed. 2d* 1082 (1968); *Uniformed Sanitation Men Ass'n, Inc. v. Commissioner of Sanitation,* 392 *U. S.* 280, 88 S. Ct. 1917, 20 *L. Ed. 2d* 1089 (1968); *Williams v. Florida,* 399 *U. S.* 78, 90 S. Ct. 1893, 26 *L. Ed. 2d* 446 (1970); *McGautha v. California,* 402 *U. S.* 183, 91 S. Ct. 1454, 28 *L. Ed. 2d* 711 (1971); *California v. Byers,* 402 *U. S.* 424, 91 S. Ct. 1535, 29 *L. Ed. 2d* 9 (1971).

All of the aforecited cases were dealt with by this Court in *State v. Falco,* 60 *N. J.* 570, 578–584 (1972), and no purpose would be served by repeating what was said there, although *Williams v. Florida, supra,* may be worthy of brief comment here. In *Williams* the Supreme Court held that a criminal defendant's privilege against self-incrimination was not violated by a pretrial discovery requirement that he "give notice of an alibi defense and disclose his alibi witnesses." 399 *U. S.* at 83, 90 S. Ct. at 1897, 26 *L. Ed. 2d* at 451. Earlier we had sustained our own comparable alibi rule (*R.* 3:11). See *State v. Angeleri,* 51 *N. J.* 382, *cert.* denied, 393 *U. S.* 951, 89 S. Ct. 372, 21 *L. Ed. 2d* 362 (1968); *State v. Baldwin,* 47 *N. J.* 379, *cert.* denied, 385 *U. S.* 980, 87 S. Ct. 527, 17 *L. Ed. 2d* 442 (1966). In *Williams* the Supreme Court flatly rejected the defendant's contention that

the alibi discovery provision unconstitutionally interfered with "his right to wait until after the State had presented its case to decide how to defend against it." 399 *U. S.* at 83, 90 S. Ct. at 1896, 26 *L. Ed. 2d* at 450; see also *State v. Montague,* 55 *N. J.* 387, 396–400 (1970).

Cases such as *Williams* involved criminal proceedings whereas here we are concerned with civil proceedings in which much broader mutual discovery is generally available. In civil proceedings the courts have, in the interests of truth and justice, displayed understandable readiness to impose noncriminal sanctions for refusal to submit to pretrial discovery on the basis of the privilege; as Chief Judge Fuld put it in *Steinbrecher v. Wapnick, supra*: "Since the sole purpose of the privilege is to shield a witness against the incriminating effects of his testimony, the courts will not permit its use as a weapon to unfairly prejudice an adversary." 24 *N. Y. 2d* at 362, 300 *N. Y. S. 2d* at 563, 248 *N. E. 2d* at 425. Thus where the plaintiff in a civil action refuses to testify in pretrial discovery on grounds of self-incrimination, it is generally held that his action may be dismissed or that he may be subjected to some lesser noncriminal sanction. See *Christenson v. Christenson,* 281 *Minn.* 507, 162 *N. W. 2d* 194 (1968); *Levine v. Bornstein,* 13 *Misc. 2d* 161, 174 *N. Y. S. 2d* 574 (*Sup. Ct.* 1958), *aff'd* 7 *App. Div. 2d* 995, 183 *N. Y. S. 2d* 868, *aff'd,* 6 *N. Y. 2d* 892, 190 *N. Y. S. 2d* 702, 160 *N. E.* 2d 921 (1959); *Franklin v. Franklin,* 365 *Mo.* 442, 283 *S. W. 2d* 483 (1955).

In *Christenson* the plaintiff wife sued for divorce charging extreme cruelty. The defendant husband denied the charge and in turn sought a divorce on grounds of extreme cruelty and adultery. The defendant sought the plaintiff's pretrial deposition but she refused to testify claiming the privilege against self-incrimination. The court upheld her testimonial refusal and indeed the pertinent state rules provided, as do New Jersey's Court Rules, for pretrial discovery only of matters "not privileged". See *R.* 4:10–2. However the Minnesota Supreme Court held that, if she persisted in her re-

fusal, the trial court could, in the exercise of its discretion and its inherent judicial power to do equity, direct that she either waive her privilege "or have her action dismissed." 281 *Minn.* at 524, 162 *N. W. 2d* at 204. In the course of his opinion for the court, Justice Nelson reviewed the many divorce and other civil cases throughout the country in which similar results were reached on similar grounds. 281 *Minn.* at 509–524, 162 *N. W. 2d* at 196–204; see *Kaminsky, supra,* 39 *Brooklyn L. Rev.* at 143; *Madsen, supra,* 24 *U. Fla. L. Rev.* at 543; *Note, supra,* 52 *Va. L. Rev.* at 333.

When dealing with a civil defendant's refusal to submit to pretrial discovery the courts have generally declined to strike his answer and thus permit a default judgment against him although they have, in seeking a proper balance, been willing to impose lesser sanctions. See *Steinbrecher v. Wapnick, supra,* 24 *N. Y. 2d* 354, 300 *N. Y. S. 2d* 555, 248 *N. E. 2d* 419; *Grognet v. Fox Valley Trucking Service,* 45 *Wis. 2d* 235, 172 *N. W. 2d* 812 (1969); *Kaminsky, supra,* 39 *Brooklyn L. Rev.* at 144; *Madsen, supra,* 24 *U. Fla. L. Rev.* at 548; *Note, supra,* 52 *Va. L. Rev.* at 331. In *McKelvey v. Freeport Housing Authority,* 29 *Misc. 2d* 140, 220 *N. Y. S. 2d* 628 (*Sup. Ct.* 1961), Justice Brennan differentiated, in the following terms, the New York cases where the plaintiff's complaint was stricken from those in which the defendant's answer was not stricken: "One may not invoke the judicial process seeking affirmative relief and at the same time use the privileges granted by that process to avoid development of proof having a bearing upon his rights to such relief. In the instant case, however, the party whose answer is sought to be stricken because he invokes his privilege is a defendant who is in court involuntarily, seeking only to defend, and asserting no affirmative defenses or matters as to which he has any burden of proof." 29 *Misc. 2d* at 142, 220 *N. Y. S. 2d* at 630; *cf. Barbato v. Tuosto,* 38 *Misc. 2d* 823, 238 *N. Y. S. 2d* 1000, 1002 (*Sup. Ct.* 1963); 4 *Moore's Federal Practice* ¶ 26.60[6] (*2d ed.* 1974).

■ In *Steinbrecher v. Wapnick, supra,* the lower court had stricken the answer and had entered a default judgment against a defendant who had refused to testify during examination before trial on grounds of self-incrimination. In the course of his reversal opinion, Chief Judge Fuld noted that where the civil plaintiff, who is in court voluntarily, invokes his privilege at examination before trial he is unfairly depriving the defendant of "information necessary to his defense" and consequently he may in the court's discretion be subjected to a sanction as severe as dismissal. 24 *N. Y. 2d* at 362–363, 300 *N. Y. S. 2d* at 563–564, 248 *N. E. 2d* at 425–426. On the other hand the civil defendant is in court involuntarily, and when called for pretrial examination he has "no choice but to appear and face questions chosen by his opponent solely for the latter's benefit." 24 *N. Y. 2d* at 364, 300 *N. Y. S. 2d* at 564, 248 *N. E. 2d* at 426. Here the sanction of striking the answer would ordinarily appear to be unduly harsh and to result in an improper balance; as the court suggested in *Grognet v. Fox Valley Trucking Service, supra,* while a good faith exercise of his privilege by the defendant in a civil case does not mandate a summary judgment against him the trial court may readily draw an adverse inference. 45 *Wis. 2d* at 239, 172 *N. W. 2d* at 815: "[I]n a civil case as distinguished from a criminal case, an inference of guilt . . . may be drawn from his invoking the fifth amendment." See *Duratron Corp. v. Republic Stuyvesant Corp., supra,* 95 *N. J. Super.* 527; *Commercial Union Ins. Co. v. Thomas-Aitken Constr. Co.,* 54 *N. J.* 76, 80 (1969) ; *cf.* Ratner, "Consequences of Exercising the Privilege Against Self-Incrimination." 24 *U. Chi. L. Rev.* 472, 476 (1957).

In *Rubenstein v. Kleven,* 150 *F. Supp.* 47 (*D. Mass.* 1957), the plaintiff sued for breach of contract and in his answer the defendant set up an affirmative defense of illegality. The plaintiff took the defendant's deposition during which the defendant exercised his privilege and declined to answer questions which might indicate criminality. The

court held that if the defendant persisted in his pretrial refusal he would be precluded from establishing illegality at trial "through his own testimony or otherwise". 150 *F. Supp.* at 48. However, there was no suggestion of the entry of a default judgment. In *Duffy v. Currier,* 291 *F. Supp.* 810 (*D. Minn.* 1968), the plaintiff brought a death action and the defendant filed an answer and a jurisdictional motion. The plaintiff took the defendant's pretrial deposition during which he refused to answer certain questions on the ground that the answers might tend to incriminate him. The trial court rejected the plaintiff's motion that the defendant be compelled to answer. There was no suggestion of striking the defendant's answer though the court, after pointing out that the Federal Court Rules, as ours, contemplate " 'full and equal mutual discovery in advance of trial' so as to prevent surprise, prejudice and perjury", indicated that it would not tolerate any effort by the defendant to waive the privilege and testify at trial after having persisted in his refusal to testify at pretrial examination. 291 *F. Supp.* at 815; *cf.* Kaminsky, *supra,* 39 *Brooklyn L. Rev.* at 151: "[T]he court should take whatever steps are necessary to assure that the defendant has not utilized the privilege to foreclose pre-trial discovery by his adversary, only to surprise him at trial, years later, with a voluntary relinquishment of the privilege and belated revelation of his own version of the facts." See *Costanza v. Costanza,* 66 *N. J.* 63 (1974).

█ The cited cases serve to illustrate the recognized availability of broad choices of sanctions when dealing with good faith exercises of the privilege in civil litigation. Proper balances are the goal and trial courts must seek those sanctions which are best designed to protect the pertinent public and private interests without impairing the historic designs of the privilege. The striking of the answers of the defendants, thereby placing them in the position of defaulting and nonresisting parties, appears to us to have imposed an undue cost on the exercise of the privilege and to have been un-

warranted in the circumstances. The plaintiff has the burden of establishing his charge of adultery and there is no suggestion by him that he will be unable to proceed expeditiously with his case without the aid of the pretrial testimony from the defendants. At the trial the plaintiff will have the benefit not only of his own showing but also of any inferences to be drawn from the defendants' pretrial testimonial refusals.

Under the cases the defendant Grange's counterclaim seeking affirmative relief stands on a somewhat different footing than does her answer although here again we consider the striking of the counterclaim to have been unwarranted. The counterclaim was based on extreme cruelty and did not relate to the alleged adultery on which the complaint was grounded. The interrogatories which were unanswered under claim of privilege bore entirely on the alleged adultery, and at least at this stage and on the record before us, we are in no position to say that the alleged adultery will have any bearing on the counterclaim. *Cf. N. J. S. A.* 2A:34–7; *C. v. C.,* 54 *N. J.* 223 (1969). If later developments call for the imposition of a sanction with respect to the counterclaim the trial court will of course be in a position to take appropriate action.

In their joint Appellate Division brief the defendants suggested that after the plaintiff moved to strike they should have been afforded a further formal opportunity to answer the interrogatories as an alternative to the striking of the pleadings. This might have avoided appellate proceedings and in addition the trial court might have considered the entry of a protective order as an encouragement towards testimonial responses. See *R.* 4:10–3; *cf. State v. DeCola,* 33 *N. J.* 335, 352 (1960). In any event the defendants will now have the opportunity of responding to the pretrial interrogatories. If they persist in their earlier refusals but later seek to testify on the subject at trial, the trial court may in its discretion preclude them. See *Costanza v. Costanza, supra,* 66 *N. J.* 63.

Reversed and remanded.

*For reversal and remandment*—Chief Justice HUGHES, and Justices JACOBS, HALL, MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD—7.

*For affirmance*—None.