■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VERNON BAGBY, Appellant. — Appeal by defendant from a judgment of the County Court, Westchester County (Couzens, J.), rendered November 28, 1979, convicting him of criminal possession of a controlled substance in the first, third, fifth and eighth degrees and two counts of criminally using drug paraphernalia in the second degree, after a nonjury trial, and imposing sentence. The appeal brings up for review the denial of those branches of defendant's motion which were to suppress physical evidence and to controvert a search warrant (Dachenhausen, J.). ¶ Judgment reversed, on the law, and new trial ordered. ¶ The crucial issue to be decided at defendant's nonjury trial was whether he resided at his former (then current) wife's apartment where the controlled substances and paraphernalia were found and/or exercised dominion and control over the premises from which it could be inferred that he had constructive possession of these items. ¶ Sandra Mann, defendant's former wife, testified for the prosecution pursuant to a subpoena. According to Mann, who denied possessing any

drugs in her apartment, no one other than herself and defendant possessed keys to the apartment. The witness testified that defendant had threatened her and her family on several occasions prior to the trial. ¶ On cross-examination, Mann testified that a police officer came to her place of employment within approximately a week of trial and interviewed her there. Although the officer had come to tell Mann that she had to testify, he had not threatened her with prosecution for drug possession if she refused. ¶ Following Mann's testimony, the trial court denied an application to revoke defendant's bail but conditioned bail upon his not attempting to privately see the witness or her family during the pendency of the action. ¶ After the People had rested, defendant indicated an intent to call Sandra Mann as a defense witness. At defense counsel's suggestion, the court appointed an attorney (Mr. Traynor) to represent the witness and protect her rights. The prosecutor then addressed the court, stating that he had informed Traynor that Mann had testified favorably to the People and that the People were in possession of a sworn statement which he was willing to provide to Traynor. The prosecutor further stated that "I think that [Mr. Traynor] should know * * * if the testimony is materially different there is a good likelihood of a perjury prosecution". ¶ The proceedings were then adjourned to permit Traynor to confer with Mann. The court denied another application to revoke bail but did direct defendant not to speak to witnesses, to Sandra Mann's parents or Sandra's child. ¶ When Ms. Mann again took the witness stand, she responded to the first two substantive questions asked of her by "taking" the Fifth Amendment. Defense counsel then asked if defendant had keys to the outer door of her premises, prompting a response that he did not. The prosecutor objected on the ground that she could refuse to answer all questions or none but could not be selective. Traynor then stated that Mann had invoked the Fifth Amendment and refused to answer questions. ¶ Following a discussion, the court ruled that the objection to the last question was sustained and that Mann would not be allowed to testify. After a short recess, the witness took the stand once more. When asked whether she wanted to tell the truth, the prosecutor again objected, suggesting that it be determined whether she would continue to invoke her privilege. The court then addressed Mann, reminding her of her assigned attorney's recommendation to invoke the Fifth Amendment on each and every question, and asked if that was what she wished to do. The response was in the affirmative. ¶ Defense counsel then attempted to resume examination of the witness. Following another objection by the prosecutor, Mr. Traynor asserted that his client had invoked the Fifth Amendment and asked for a ruling before questioning continued. The court ruled that if she answered any further questions, her Fifth Amendment rights would be waived from the beginning of questioning. Following further discussion as to whether Mann understood the legal implications, the court held an *in camera* interview with both the witness and her attorney. Upon return to the courtroom, the court ascertained that she wished to invoke her Fifth Amendment privilege as to each and every question to be propounded and ruled that she could not be questioned further. Defense counsel excepted, stating, *inter alia,* that she had waived the privilege by having already answered one question. ¶ We agree with defendant's contention that the trial court erred in its application of the Fifth Amendment privilege against self incrimination to Mann, in that she could not subsequently invoke the privilege after having testified for the prosecution without having done so. ¶ Generally, a witness is the judge of her own right to invoke the privilege (*People v Thomas,* 51 NY2d 466, 472; *People v Arroyo,* 46 NY2d 928, 930). Furthermore, the witness may claim the privilege based upon the fact that the proposed testimony would be so inconsistent with prior statements under oath as to expose him to conviction for perjury (see, e.g., *People v Sapia,* 41 NY2d 160, 164, cert den 434 US 823). The instant situation is one,

however, in which these general rules are inapplicable. ¶ By testifying for the prosecution on its direct case, Mann waived her right to subsequently invoke the privilege (see *Brown v United States,* 356 US 148, 155-156; *Rogers v United States,* 340 US 367, 370-371). The privilege applies only where there has not been an earlier waiver in the same proceeding (*People v Cassidy,* 213 NY 388, 395-396; *Steinbrecher v Wapnick,* 24 NY2d 354, 364-370; *Matter of Neff,* 206 F2d 149, 152; *United States v Steffen,* 103 F Supp 415, 417). By allowing withdrawal of the waiver, the trial court effectively deprived defendant of the opportunity to impeach Mann, even though she had earlier been subjected to cross-examination (cf. *People v Kelly,* 48 AD2d 802, 803). This was clearly error. "[A] witness who has without objection submitted himself to examination and who has answered questions pertinent to the inquiry cannot thereafter withdraw his consent * * * 'Once he waives his privilege against self-incrimination, a witness may not withdraw his waiver to prevent matters which he has already gone into from being explored in greater detail' " (*Matter of Bohland v Markewich,* 26 AD2d 545). The witness should have been directed to testify, if necessary under penalty of contempt. If she continued to refuse to testify, such refusal precluding defendant from testing the truth of her earlier testimony, then it would have been proper to strike that earlier testimony (*Klein v Harris,* 667 F2d 274, 289). Based on the foregoing, reversal is mandated. ¶ We have considered defendant's ot' er claims and find them to be without merit. Lazer, J. P., Thompson, Niehoff and Boyers, JJ., concur.