OPINION OF THE COURT
Alexander, J.
The issue on this appeal is whether a nonparty witness who testifies for the prosecution and is fully cross-examined without *412 invoking her 5th Amendment privilege thereby waives the right to invoke that privilege, in the face of a threat of a perjury prosecution, when recalled as a defense witness and asked the same questions she had previously answered. We hold that under these circumstances, the 5th Amendment privilege against self-incrimination is not waived.
On December 26,1978, members of the Mount Vernon Police Department went to an upstairs apartment leased by Sandra Mann in a two-family, house in order to execute a warrant to search both the premises and defendant Vernon Bagby. The officers entered the unoccupied apartment and found quantities of several controlled substances and assorted drug paraphernalia. Defendant was thereafter arrested and charged with criminal possession of a controlled substance in the first, third, fifth and eighth degrees and two counts of criminally using drug paraphernalia. Defendant and Mann had been married; divorced and remarried at the time of defendant’s arrest, but by the time of his trial they were again divorced. A critical issue at defendant’s nonjury trial was whether he had been residing at Mann’s apartment in December 1978 or had exercised sufficient dominion and control over the premises during that period to infer that he had constructive control over the drugs found therein.
The prosecution subpoenaed Mann to testify during its casein-chief. She testified that defendant had lived with her for a three-week period during December 1978, that she had given him a set of keys to the premises and that they were the only two persons who had keys. She denied possessing any of the drugs found in the apartment and claimed that defendant had been at her apartment and had threatened to harm her “if anything went wrong with the case.” She was thoroughly cross-examined by the defense but maintained the essential thrust of her direct testimony. She confirmed that she had been interviewed at her place of employment about a week before the trial by a police officer who told her she would have to testify, but denied that they had threatened her with prosecution for drug possession if she refused.
On the day following her testimony, Mann contacted defense counsel and requested to go back on the stand and “tell the truth”. Defense counsel informed the Trial Judge of Mann’s request and his intention to recall her as a defense witness. The court appointed an attorney to protect Mann’s interests. The prosecutor informed the attorney on the record that prior to testifying, Mann had given him a sworn statement that was *413 consistent with the favorable testimony she had given for the People and that “if the testimony [on recall] is materially different there is a good likelihood of a peijury prosecution.” The court then recessed so that Mann’s attorney could speak with her and further advise her.
When trial resumed, the defense called Mann to the stand and began to question her as follows:
“Q. Miss Mann, you recall you testified previously in this case, I think last Wednesday, do you remember that? A. Yes.
“Q. At that time, I believe, that you testified that during the month of December, 1978, up until December 26th, that your husband, the defendant had been living with you at 127 South 12th Avenue in Mt. Vernon, was that a correct statement? A. I take the Fifth Amendment.
“Q. Was the defendant living with you during December of 1978? A. I take the Fifth Amendment.
“Q. Did the defendant have keys to the outer door of the premises at 127 South 12th. A. No, he did not.”
At this point the prosecutor objected, asserting that the witness should not be allowed to selectively invoke her 5th Amendment privilege. Traynor (Mann’s attorney) then advised the court that she did in fact wish to invoke her privilege against self-incrimination and had not expected to be questioned further following the assertion of the privilege. The court sustained the objection to the last question, and following an in camera discussion with the witness and her counsel and their statements made on the record that she intended to assert her privilege in response to all questions, the court discharged the witness.
The Appellate Division reversed the judgment of conviction and ordered a new trial based on its view that “[b]y testifying for the prosecution on its direct case, Mann waived her right to subsequently invoke the privilege * * * By allowing withdrawal of the waiver, the trial court effectively deprived defendant of the opportunity to impeach Mann, even though she had earlier been subjected to cross-examination” (100 AD2d 625, 627 [citations omitted]).
As the Appellate Division correctly noted, “a witness is the judge of her own right to invoke the [5th Amendment] privilege (People v Thomas, 51 NY2d 466, 472; People v Arroyo, 46 NY2d 928, 930) * * * [and] the witness may claim the privilege based upon the fact that the proposed testimony would be so inconsistent with prior statements under oath as to expose him to *414 conviction for peijury (see, e.g., People v Sapia, 41 NY2d 160, 164, cert den 434 US 823)” (100 AD2d 625, 626). We do not agree, however, that in the circumstances here presented it would have been proper for the trial court to have directed Mann to testify under threat of contempt, if necessary, or to strike her earlier testimony if she continued to claim her privilege.
Although in some instances a witness, by giving testimony, will be found to have waived the right subsequently to invoke the privilege in the same proceeding, the cases establishing this principle and their underlying rationale are inapposite to the circumstances of this case. In its classic application, the waiver principle prevents a witness from testifying in his or her own defense and thereafter refusing to answer questions on cross-examination regarding matters made relevant by the direct examination because the answers might tend to be incriminating (see, Brown v United States, 356 US 148, 156). Thus, a witness who foregoes the protection of the constitutional privilege against self-incrimination by giving testimony to his advantage or to the advantage of his friends cannot in the same proceeding assert the privilege and refuse to answer questions that are to his disadvantage or the disadvantage of his friends (People v Cassidy, 213 NY 388, 394).
However, a witness may assert the privilege anew in a separate proceeding, where circumstances and surroundings can often differ dramatically (People v Cassidy, 213 NY 388, 395-396, supra). Thus, in Matter of Neff (206 F2d 149), a witness was allowed to assert the privilege against self-incrimination at a criminal trial although no claim of the privilege had been asserted earlier when testifying regarding the same subject matter during a Grand Jury hearing. The Neff court noted that at trial, “the setting in which the questions were asked of her had greatly changed and she could well have had apprehensions as to the incriminating effect of her requested testimony which she did not have on the earlier occasion” (206 F2d, at pp 152-153).
A further distinction has been drawn between defendants in criminal cases and “ordinary witnesses” — nonparties in criminal cases and witnesses in civil cases (see, Steinbrecher v Wapnick, 24 NY2d 354; Rogers v United States, 340 US 367). Because the criminal defendant can never be compelled to take the stand, when he does so voluntarily he waives his 5th Amendment privilege and cannot refuse to answer questions regarding any matters relevant to the case (Steinbrecher, supra, at p 360).
*415 A nonparty witness in a criminal case, however, can be compelled to testify against his will and thus does not waive his 5th Amendment privilege merely by acceding to the command of a subpoena. Thus, “ ‘where the previous disclosure by an ordinary witness is not an actual admission of guilt or incriminating facts, he is not deprived of the privilege of stopping short in his testimony whenever it may fairly tend to incriminate him’” (Steinbrecher, supra, at pp 360-361, quoting McCarthy v Arndstein, 262 US 355, 359; see also, Brown v United States, 356 US 148, supra).
A waiver should be found only when a witness’ statements are “ ‘incriminating’, meaning that they did not merely deal with matters ‘collateral’ to the events surrounding commission of the crime * * * but directly inculpated the witness on the charges at issue * * * and * * * [thus] contained] information that the witness was privileged not to reveal” (cf. Klein v Harris, 667 F2d 274, 288). Thus in Matter of Bohland v Markewich (26 AD2d 545), a Grand Jury witness was found to have waived the privilege when he gave answers to general inquiries concerning his participation in acts of bribery, which were the subject of the investigation, but thereafter declined to answer questions about a specific incident.
Applying these general principles to the present case, it is clear that in testifying initially Mann did not waive her right to later assert her 5th Amendment privilege to avoid exposing herself to possible peijury — criminality wholly unrelated to the subject matter of her original nonincriminating testimony. As a nonparty witness, Mann had no option but to testify when subpoenaed by the prosecution. At that time she could not rightfully have asserted a 5th Amendment privilege unless her answers would have exposed her to a real danger of criminal liability or implicated her with respect to the events of which she was testifying, neither of which they did. It was not until she was recalled by the defense and faced with the danger of exposing herself to possible peijury by answering the questions then put to her in a manner materially different from her previous answers that her privilege against self-incrimination became relevant, and thus waivable.
We conclude that by testifying and being fully cross-examined as a nonparty witness concerning facts that were not self-incriminating, in that they did not directly inculpate her on the charges at issue, Mann did not waive her right, upon being recalled by the defendant, to invoke her 5th Amendment privilege so as to avoid giving testimony that might have involved *416 her in criminality (perjury) that was not the subject of her initial testimony.
Accordingly, the order of the Appellate Division, rendered on the law alone, should be reversed, the judgment of conviction reinstated and the matter remitted to the Appellate Division for consideration of the facts underlying the judgment of conviction.
Chief Judge Wachtler and Judges Jasen, Meyer, Simons and Kaye concur; Judge Titone taking no part.
Order reversed, judgment of conviction reinstated and case remitted to the Appellate Division, Second Department, for further proceedings in accordance with the opinion herein.