36 N.Y.2d 708 (1975)
The People of the State of New York, Respondent,
v.
Alvin Schneider, Appellant.
Court of Appeals of the State of New York.
Argued February 11, 1975.
Decided February 27, 1975.
Arthur T. Cambouris and William E. Hellerstein for appellant.
Nicholas Ferraro, District Attorney (Charles M. Newell of counsel), for respondent.
Concur: Judges GABRIELLI, JONES, WACHTLER, FUCHSBERG and COOKE. Chief Judge BREITEL dissents and votes to affirm in the following opinion in which Judge JASEN concurs.
*709 Order reversed and a new trial ordered on the dissenting memorandum by Mr. Justice JAMES D. HOPKINS at the Appellate Division.
Chief Judge BREITEL (dissenting).
I dissent and would affirm.
Defendant, a New York City police officer, was convicted, after jury trial, of the statutory consensual rape of a 15-year-old girl and related sexual offenses.
Defendant gave an implausible explanation, especially for a police officer, of his several transactions with the girl. He testified that she, a casual acquaintance, had had trouble at home and sought his advice. He took her to her girl friend's home; and because the friend was not home, he returned the girl to the restaurant where he had first met her. Later he took her back to the girl friend's home where she remained for the night. The next day, a similar round of circumstances occurred. This time the girl friend refused to put her up, as did Maggio, a fellow police officer. Defendant then placed the 15-year-old girl in a motel, departing shortly, he testified, with Maggio.
Several days after, according to defendant, the girl, like a woman scorned, threatened to charge him with having had sexual intercourse with her unless he continued to see her. He got her to sign a confession to the contrary and had it sworn to before a notary public.
*710 The girl of course testified differently, in particular to two motel assignations on consecutive evenings. She claimed to have been previously a virgin.
A clerk of one of the motels testified that defendant had registered the couple as man and wife. The registration was undisputedly in defendant's handwriting. The automobile registration number recorded was that of defendant's vehicle. Two telephone calls were made from the room to defendant's off-hours employer, a taxi company.
Defendant was a married man living with his wife and their six-year-old child. He was 31 years of age at the time of trial, had been on the police force about two years, had served in the armed forces, and, in addition to his taxi work, he was a freelance writer. No novice was he with the facts of life.
Even without considering the inconsistent and contradictory explanations defendant gave his police superiors and before the Grand Jury, the case against him was all but conclusive. True, the trial jury deliberated for 11 hours. This is not extraordinary in statutory rape cases where the jury is apt to assess the moralities, as well as the legalities upon which they have been instructed by the Trial Justice. And, of course, jurors recognize the enormity of the consequences to a police officer and a married man, if convicted, even under our residual double standards, of dallying with a willing but underage girl. Indeed, defendant was sentenced only to a five-year term of probation.
What particularly disturbed the two dissenters at the Appellate Division and evidently persuades this court to reverse is the inapt use by the prosecution of the testimony of the witness Maggio, defendant's policeman friend.
Because damned by the motel registration card and the motel clerk's testimony, defendant had, in the police disciplinary investigation and proceedings, obtained the help of his friend, Maggio, to corroborate his unbelievable story about placing the girl in the motel. Maggio's position became untenable when he faced police disciplinary proceedings in his own right. He recanted. Although defendant knew all this, for otherwise he would have put Maggio on the stand as his own witness, he testified to Maggio's presence and role in leaving the girl at the motel, alone and unmolested.
The prosecution, one may perceive, was placed in a difficult position. If Maggio were not called as a witness, defendant's *711 implausible story might have taken on minimal credibility, since a key witness, and a police officer at that, was not called by the People (cf. People v. Valerius, 31 N Y 2d 51, 55; People v. Moore, 17 A D 2d 57, 60). Yet, the People conceded that they knew by trial time that Maggio would not testify but would assert at some point his privilege against self incrimination to avoid or lessen the deep troubles he was in already. Maggio was called as a witness, and denied that he was ever present at the meetings between defendant and the girl. When questioned by defense counsel about his prior statements, however, he asserted his privilege. Of course, without more, Maggio's contradiction of defendant's preposterous explanation was grave indeed, and the "error", if that it be, was preserved by appropriate motion to strike Maggio's testimony.
To avoid the impact of Maggio's direct testimony it was necessary for defendant to show the jury that Maggio had previously corroborated defendant's implausible story. This was effectively accomplished by calling as witnesses defendant's former lawyer and an Assistant District Attorney, each of whom testified that previously Maggio had, in contradiction to his trial testimony, partially supported defendant's version of an innocent relationship with the 15 year old.
The jury had defendant's version of the full story, and the impeachment of Maggio. Most important, it was defendant who injected Maggio into the case, knowing that he would no longer support defendant's version, and on the other hand, would probably not testify for the People either.
On this view, there was a proper purpose in putting Maggio on the witness stand, and consequently there was no prosecutorial misconduct (cf. United States v. King, 461 F.2d 53, 56). There was certainly no "conscious and flagrant attempt to build [a] case out of inferences arising from [Maggio's] use of the testimonial privilege" (Namet v. United States, 373 U. S. 179, 186). In any event, Maggio's invocation of the privilege did not in fact prevent defendant from impeaching him by proof of his prior inconsistent statements which also purported to exculpate defendant.
Under these circumstances, I see no prejudicial error of any kind in not striking Maggio's direct testimony.
Of course, the prosecution would have been better advised to present the problem to the trial court and defense counsel, *712 and to suggest that unless there were a stipulation with respect to the unavailability of Maggio, and the nature of that unavailability, the People would be compelled to put him on the witness stand. The one thing that should be certain is that defendant was not entitled to inject Police Officer Maggio into his testimony and then to argue to the jury that the People had not produced a witness peculiarly under their control.
In summary, defendant resorted to a dangerous ploy; it backfired; and in view of the invulnerable proof establishing guilt, he is not entitled to a reversal or a new trial. This was not a situation in which, as maintained by the dissenters at the Appellate Division, defendant was deprived of an opportunity to "rebut" Maggio's testimony. The situation is reversed. Defendant introduced Maggio into the case, and before Maggio had testified on rebuttal, defendant had given his contrary version of Maggio's role in this saga of motels and a 15-year-old child.
Accordingly, I dissent and vote to affirm.
Order reversed, etc.