OPINION OF THE COURT
Herbert A. Posner, J.
THE ISSUE
In this motion for a new trial based upon newly discovered evidence, the court was confronted with a novel issue after it conducted a hearing (see, People v Stokes, 83 AD2d 968) and learned that the newly discovered evidence posed the same dilemma as was immortalized by Shakespeare in Hamlet’s famous soliloquy, “To be or not to be.” In this case the question was: Is this evidence to be admissible at a new trial or is it not to be admissible at a new trial? If it is admissible it could very well result in an acquittal on one (felony murder) of the two counts for which the defendant was convicted.
THE FACTS
On October 4, 1984, the jury returned a verdict finding the defendant, Donna Bell, guilty of felony murder and burglary in the first degree in connection with the death of her mother, Palmina Bell. The following day, her attorney received a letter from Stephen Gagne, the boyfriend with whom Donna Bell was living at the time of her mother’s murder. Stephen Gagne had *44 been tried and convicted of two counts of murder in the second degree (intentional and felony murder) as well as burglary in the first degree in connection with Palmina Bell’s homicide and was serving a sentence of 25 years to life for those crimes. In his letter, which was dated September 28,1984, he indicated, for the first time, that he would testify on Donna Bell’s behalf and try to refute the testimony which his brother, Louis Gagne, was going to give as a prosecution witness.[1]
Stephen Gagne was the only witness called to testify at this hearing which was held on November 19,1984. He responded in the negative to leading questions posed by Donna Bell’s attorney as to whether Donna Bell had been involved either in the burglary of her mother’s apartment or her mother’s murder. However, he invoked his privilege against self-incrimination to all questions which sought to elicit the basis for this assertion, whether asked by Donna Bell’s attorney during direct testimony or by the Assistant District Attorney during cross-examination. Stephen Gagne was trying “to have his cake and eat it too.” Since his conviction was still pending appeal, he did not want to give any testimony which could be used against him should he be able to obtain a new trial. Yet, he wanted to appear eager to help Donna Bell so that, hopefully, she would not testify against him at such new trial.[2]
At her trial, Donna Bell raised the nonkiller affirmative defense to the felony murder charge. This required a finding by the jury that she was a “nonkiller” participant in the burglary. An analysis of the facts in this case will make it clear why Stephen Gagne’s testimony could be beneficial to her in proving this defense by a “preponderance of the evidence.”[3]
*45 Palmina Bell was found dead in her home in Bayside, Queens, on the evening of April 6, 1983. She had been strangled with a nylon stocking. Donna Bell, Stephen Gagne and his younger brother, Louis Gagne, were arrested and indicted for two counts of murder in the second degree (intentional and felony murder) and burglary in the first degree.
All three defendants made inculpatory statements to the police and Donna Bell and Louis Gagne also made videotaped statements to an Assistant District Attorney. At Donna Bell’s trial, Louis Gagne testified as a witness for the People and substantially reiterated his statements to the police. He related that with his brother Stephen and Donna Bell, he had entered Palmina Bell’s house through a window to steal her bank card. They found Palmina Bell asleep in bed and Stephen announced that he was going to kill her. Stephen Gagne then commenced to strangle Palmina Bell with a nylon stocking he found in the bedroom and when she began to struggle, Louis Gagne, as instructed by his brother, placed his foot on her back and held her down while Stephen completed the strangulation.
The trial testimony of Louis Gagne differed from his pretrial statements in one important respect. He testified at the trial that when Stephen Gagne announced that he was going to kill her mother, Donna Bell said “Go ahead.” In his statements to the police and an Assistant District Attorney, Louis Gagne never said that Donna Bell had verbally acquiesced to her mother’s murder, he had stated only that she was in the house searching for the bank card and saw the killing.
In her pretrial statements to the police and an Assistant District Attorney, Donna Bell had denied entering her mother’s house on the day of the murder. She said that she remained outside, waiting in Stephen Gagne’s car, while Stephen and his brother went into the house. She also maintained that she was not aware that it was their intention to commit a burglary until they came out of the house and told her that while they were inside, ransacking the house, Palmina Bell awoke and saw them and they had killed her. Earlier, she had told the police she had not been to her mother’s house for several days.
At the trial, in addition to Louis Gagne’s testimony, the prosecution introduced evidence that Donna Bell’s fingerprints had been found in her mother’s apartment by the police investigating her homicide. A neighbor also testified that he saw Donna Bell leaving her mother’s house with two young men early in the morning on the day of the murder and a bank official testified that Palmina Bell’s bank card had been used at least two times after her death to withdraw money.
*46 Donna Bell took the stand in her own defense and admitted that on the day of the murder, she had entered her mother’s house with Stephen and Louis Gagne. She said that she went to the house with the Gagne brothers to see how her mother, who had been burglarized the day before, was faring. When her mother failed to respond to the doorbell, one of them entered the house through a window and let the other two in through the front door. Once inside, Stephen Gagne ordered her to look for her mother’s bank card and she obeyed him out of fear. When he suddenly announced that he was going to kill her mother, she was dismayed, but because of fear did nothing to stop him. After her mother was murdered, she found the bank card in a pillow case and left the house with Louis and Stephen Gagne. She knew the secret code which activated the bank card and before her mother’s body was discovered, they used it on two occasions to withdraw money.
After lengthy jury deliberations, Donna Bell was acquitted of intentional murder and convicted only of felony murder and burglary in the first degree. As to the crime of burglary, there was overwhelming proof of guilt. However, as to felony murder, the jury would have to find that Donna Bell did not prove her “nonkiller” affirmative defense by a preponderance of the evidence. It was her burden to prove that she
“[1] Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; arid * * *
“[2] Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.” (Penal Law § 125.25 [3] [a], [d].)
Therefore, forthright testimony by Stephen Gagne that he and his brother alone committed the homicide, without Donna’s aid, knowledge or consent, if believed by the jury, might very well have resulted in an acquittal on the felony murder charge.
THE LAW
As a defendant in a criminal case which was still pending appeal, Stephen Gagne had the right to assert his privilege against self-incrimination and refuse to answer questions regarding the burglary and homicide of Palmina Bell. (See, People v Cassidy, 213 NY 388, 394.) The privilege was not limited to a direct question as to the commission by him of a crime; he could also properly refuse to answer any question which would disclose a necessary link in the chain of evidence to prove a crime *47 against him or which would furnish the source from which evidence of this commission might be obtained. (People ex rel. Taylor v Forbes, 143 NY 219.)
This privilege against self-incrimination can be waived and when it is, “the person becomes subject to cross-examination the same as any other witness examined in the case.” (People v Cassidy, supra, p 394.) However, unlike a defendant in a criminal prosecution who can refuse to take the stand and be sworn, an ordinary witness can only refuse to answer on the ground of self-incrimination when an incriminating question is put to him. (Richardson, Evidence § 527 [Prince 10th ed 1973]; Fisch, NY Evidence § 703 [2d ed 1977].) Therefore, while a defendant in a criminal case waives his privilege against self-incriminatian when he takes the stand and testifies, as a general rule a witness, including a party in a civil case, waives the privilege not when he voluntarily testifies about the subject matter in issue, but only when he gives testimony that is actually incriminating. (Steinbrecher v Wapnick, 24 NY2d 354, 360-361.)
There are exceptions to this rule. A witness in a civil case will not be permitted to use the privilege against self-incrimination to unfairly prejudice an adversary (Steinbrecher v Wapnick, supra, at p 362; see also, Levine v Bornstein, 6 NY2d 892; Brown v United States, 356 US 148, 155-156). Also, a prosecution witness in a criminal case will not be permitted to testify and then use the privilege to curtail cross-examination for this would constitute a deprivation of the defendant’s constitutional right of confrontation. (People v Farruggia, 77 AD2d 447; see also, People v Schneider, 36 NY2d 708; cf. People v Allen, 50 NY2d 898; People v Jones, 99 AD2d 471, lv denied 62 NY2d 620.)
The prosecution, while not protected by the Constitution, also has a right to cross-examine witnesses. “Cross-examination is universally recognized as the principal and most efficacious test for the discovery of truth.” (Richardson, Evidence § 488 [Prince 10th ed 1973]; 5 Wigmore, Evidence § 1367 [Chadbourn rev 1974].) Thus, it has been held that “a witness who has without objection submitted himself to examination and who has answered questions pertinent to the inquiry cannot thereafter withdraw his consent”, when confronted with a question that would be incriminating. (Matter of Bohland v Markewich, 26 AD2d 545; accord, People v Bagby, 100 AD2d 625.) “Once he waives his privilege against self-incrimination, a witness may not withdraw his waiver to prevent matters which he has already gone into from being explored in greater detail”. (United *48 States ex rel. Carthan v Sheriff, City of N. Y., 330 F2d 100, 102, cert denied 379 US 929; accord, Matter of Bohland v Markewich, supra; People v Bagby, supra; see also, Brown v United States, supra; Rogers v United States, 340 US 367, 370-371.)
In accordance with these rules, Stephen Gagne would not be permitted to give negative responses to “tailor-made” questions exonerating Donna Bell from involvement in her mother’s burglary and homicide, without permitting the prosecution to test the truth of this testimony by exploring the details of his knowledge of these crimes. “A person cannot waive his privilege under the constitutional provisions and give testimony to his advantage, or the advantage of his friends, and at the same time and in the same proceeding assert his privilege and refuse to answer questions that are to his disadvantage or the disadvantage of his friends.” (People v Cassidy, supra, at p 394; accord, Steinbrecher v Wapnick, supra, at p 364.)
CONCLUSION
The witness, Stephen Gagne, will not be permitted to testify at a new trial without submitting to a full cross-examination concerning the details of the burglary and homicide of Palmina Bell. Since Stephen Gagne indicated quite clearly at the hearing that he would not answer questions which might in any way incriminate him, his offer to testify on Donna’s behalf is meaningless for his testimony would not be admissible. An offer to give inadmissible testimony is no offer at all. Obviously, Stephen Gagne is playing a game, hoping that his supposed magnanimity will induce Donna Bell not to testify against him should he win a new trial. Accordingly, the defendant’s motion for a new trial based on newly discovered evidence is denied.

. Louis Gagne, 16 years of age at the time of the homicide, confessed to participating in the burglary and aiding his older brother, who was 25 years old at the time, in the strangulation of Palmina Bell. Louis was tried and acquitted, primarily because his confession had been suppressed as a result of the Rogers-Bartolomeo rule. Louis did testify at Donna’s trial and offered highly incriminating evidence against her.

. From all of the facts adduced at the joint suppression hearing and the three individual trials, it was apparent that Stephen Gagne, 7 and 9 years older, respectively, than Donna Bell and Louis, was the “leader” of the trio. Therefore, it was not illogical for Donna to conclude that Louis had testified against her out of revenge for Stephen’s conviction. Though Donna, the last of the three to be tried, did not testify against either Louis or Stephen at their trials, she was the first one to give the police a statement in which she inculpated Louis and Stephen while negating her own guilt.

. Penal Law § 125.25 (3) sets forth four elements, all of which had to be proven by Donna Bell before the jury could acquit her of felony murder. Two of these were conceded by the prosecution because they involved weapons and none of the perpetrators was armed with a weapon.