Timothy GREER, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 41S00–0003–CR–00228.

Supreme Court of Indiana.

June 28, 2001.

Richard L. Tandy, Indianapolis, IN, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Andrew L. Hedges, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Timothy Greer pled guilty to felony murder for shooting a man while robbing a gun store. He was sentenced to life in prison without parole. We find that the trial court did not err by allowing the State to present evidence regarding the details of the crime during the sentencing hearing. We also find that the trial court

did not abuse its discretion in balancing the aggravating and mitigating circumstances.

### Background

The record indicates that on October 4, 1997, Defendant and two juvenile accomplices robbed a gun store in Greenwood, Indiana. Defendant drove the two juveniles to the gun store, and after walking in, told the clerk, Stephen Stapleton, to put his hands up. While Stapleton had his hands up, Defendant shot him multiple times without provocation. Stapleton died as a result of these gunshots.

Several days after the killing, the State charged Defendant with the knowing murder of Stapleton.[1] Indiana law authorizes the State to seek a sentence of death or of life without parole "by alleging, on a page separate from the rest of the charging instrument, the existence of at least one of the aggravating circumstances" listed in the statute governing the imposition of such sentences.[2] In May, 1998, the State made the requisite filing to seek a death sentence, alleging that Defendant intentionally killed Stapleton while committing a robbery. (Intentionally killing while committing robbery is an aggravating circumstance listed in the death penalty statute.[3]) The State also amended the charging information to add felony murder,[4] conspiracy to commit robbery, and robbery counts.[5]

In October, 1999, the State made the requisite filing to seek a sentence of life without parole, again alleging as the aggravating circumstance that Defendant intentionally killed Stapleton while committing a robbery. At the same time, Defendant and the State entered into and filed a plea agreement. Under its terms, Defendant pled guilty to Felony Murder and admitted the charged aggravating circumstance of intentionally killing while committing robbery.[6] In exchange, the State dropped all other charges and agreed not to seek the death penalty. The plea agreement stipulated that "[t]he parties may present evidence relevant to the aggravating and/or mitigating circumstances listed in" the statute governing a sentence of life without parole. (*Id.*) The parties also agreed that the trial court could decide to sentence Defendant either to life without parole or to a term of years. (*Id.*)

Unlike a case in which the State seeks a sentence of life without parole that goes to trial, there is no sentencing phase before a jury when a defendant pleads guilty to the underlying murder. Rather, sentencing is conducted entirely by the court.[7] Under the statute, the court is required to find that the State has proved beyond a reasonable doubt at least one of the aggravating circumstances set forth in the statute.[8] The court must then weigh the aggravating circumstance or circumstances so proven against any mitigating circumstances that it finds to exist.[9] A sentence of life without parole is only permissible if the court finds that the aggravating circumstance or circumstances outweigh any mitigating circumstances.[10] At the sen-

---

1. Ind.Code § 35–42–1–1(1) (1993).

2. *Id.* § 35–50–2–9(a) (Supp.1996).

3. *Id.* § 35–50–2–9(b)(1) (Supp.1996).

4. *Id.* § 35–42–1–1 (1993).

5. *Id.* § 35–42–5–1 (1993).

6. *Id.* § 35–50–2–9(b)(1)(G) (Supp.1996).

7. Ind.Code § 35–50–2–9 (1998).

8. *Id.*

9. *Id.*

10. *Id.*

tencing hearing in this case, the State presented witnesses and evidence regarding the details of the crime and Defendant presented evidence in an effort to demonstrate the existence of mitigating circumstances. The trial court subsequently sentenced Defendant to life in prison without parole.

## Discussion

### I

Defendant contends that the trial court committed reversible error by permitting the State to present testimony at the sentencing hearing regarding certain facts of the crime. Defendant argues that the testimony of the State's witnesses led the court to consider non-statutory aggravating circumstances.

A sentence of life imprisonment without parole is imposed under the same standards and is subject to the same requirements as the death penalty. *Pope v. State,* 737 N.E.2d 374, 382 (Ind.2000), *reh'g denied; Nicholson v. State,* 734 N.E.2d 1047, 1048 (Ind.2000), *reh'g denied; Rawley v. State,* 724 N.E.2d 1087, 1091 (Ind. 2000); *Ajabu v. State,* 693 N.E.2d 921, 936 (Ind.1998). Defendant contends that the trial court considered non-statutory aggravating circumstances in violation of *Bivins v. State,* 642 N.E.2d 928, 955 (Ind.1994), *cert. denied,* 516 U.S. 1077, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996). In *Bivins,* this Court held that the aggravating circumstances in a capital case are narrowed to those charged by the State and found beyond a reasonable doubt. *Id.* "When the death sentence is sought, courts must henceforth limit the aggravating circumstances eligible for consideration to those specified in the death penalty statute, Indiana Code Section 35–50–2–9(b)." *Id.*

Defendant's plea agreement stated that he would "admit to and agree that, as an aggravating circumstance under [Ind. Code] § 35–50–2–9(b)(1)(G), he committed the murder by intentionally killing the victim while committing robbery." During the sentencing hearing, the State presented evidence and called two witnesses. It also introduced photographs of the victim and robbery scene, a list of the weapons that were stolen and subsequently recovered, and an autopsy photo showing the victim's wounds. The State indicated that it called its first witness, Officer John Laut, "to be the sponsor of [the] photographs, autopsy and weapons list." The State also called one of Defendant's accomplices to testify "as to what took place inside the gun store when the robbery took place."

There is no indication that the trial court considered non-statutory aggravating circumstances by hearing the testimony of the two State witnesses. Indeed, the court in its sentencing order explicitly said that it had considered "nothing else in aggravation" other than the charged aggravating circumstance.

We believe this information was properly presented to the trial court for at least two reasons. First, although Defendant stipulated that he had intentionally killed Stapleton while committing robbery, the trial court still had an independent obligation under the statute to find that the State had proved the existence of the aggravating circumstance beyond a reasonable doubt. *See* Ind.Code § 35–50–2–9 (1998). It was certainly prudent, if not necessary, for the State to make such a showing independent of Defendant's statement. Second, in determining whether life without parole is an appropriate sentence, the court must weigh aggravating and mitigating circumstances. *See id.* Moreover, the trial court must issue a detailed explanation of the factors and the weighing process that lead to its determination to impose the sentence. *See Harrison v. State,* 644 N.E.2d 1243, 1262 (Ind.1995),

*cert. denied,* 529 U.S. 1088, 120 S.Ct. 1722, 146 L.Ed.2d 643 (2000). To perform its weighing responsibilities and to issue a sufficiently detailed order, the trial court needed to know the details of Defendant's crime. The testimony and evidence presented by the State was relevant to that end.

## II

■ Defendant contends that the trial court improperly sentenced him. Specifically, he argues that the trial court either did not recognize, or give enough weight to, certain mitigating circumstances.

■ As described in Part I, *supra,* the trial court's duty when considering whether to impose a sentence of life without parole following a guilty plea includes the following steps. First, the trial court must find that the State has proved beyond a reasonable doubt that at least one of the aggravating circumstances listed in the death penalty statute exists.[11] Second, the trial court must find that any mitigating circumstances that exist are outweighed by the aggravating circumstance or circumstances.[12] Third, the trial court must make a record of its reasons for selecting the sentence that it imposes. *See Harrison v. State,* 644 N.E.2d at 1262. In arriving at its own separate determination as to whether the death penalty is an appropriate punishment, the sentencing court is to point out its employment of this process in specific and clear findings. *Id.* The trial court's statement of reasons (i) must identify each mitigating and aggravating circumstance found, (ii) must include the specific facts and reasons which lead the court to find the existence of each such circumstance, (iii) must articulate that the mitigating and aggravating circumstances have been evaluated and balanced in deter-

mination of the sentence, and (iv) must set forth the trial court's personal conclusion that the sentence is appropriate punishment for this offender and this crime. *Id.*

At the sentencing hearing, Defendant argued that the following mitigating circumstances existed: Defendant had no significant history of prior criminal conduct; Defendant was under the influence of extreme mental or emotional disturbance when the murder was committed; the "victim was a participant in, or consented to, [D]efendant's conduct;" Defendant was an accomplice in a murder committed by another person and his participation was relatively minor; Defendant was acting under the substantial domination of another person; Defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired as a result of mental disease or defect or intoxication.

The trial court considered each of the purported mitigating circumstances in a careful and complete sentencing order that complied in all respects with applicable law. The trial court weighed the aggravating circumstance with the mitigating circumstances. The only aggravating circumstance, which Defendant stipulated to in the plea agreement, was intentionally killing during the commission of a robbery. The trial court ultimately found that the aggravating circumstance outweighed the mitigating circumstances. Although we give some attention to each of Defendant's claims, particularly given the care and comprehensiveness of the trial court's order, we find no basis for a detailed review and re-examination of its findings and conclusions.

*Lack of Prior Criminal History.* Although Defendant argues that the trial

---

**11.** Ind.Code § 35–50–2–9(i)(1) (1998).

**12.** *Id.* § 35–50–2–9(i)(2).

court did not give enough weight to the mitigating factor that he has no significant history of prior criminal conduct, *see* Appellant's Br. at 14–15, the trial court's sentencing order did review Defendant's lack of significant prior criminal history, ultimately finding it a mitigating circumstance with "significant weight." As such, Defendant's argument is essentially that the trial court did not give this factor enough weight to equal or outweigh the effect of the aggravating circumstance.

We find the trial court's analysis supported by the evidence. Defendant's criminal history was slight but he had been convicted of carrying a firearm without a permit on November 19, 1996, and had committed several uncharged criminal acts shortly before he murdered Stapleton. While Defendant argues that his handgun conviction resulted only after he voluntarily summoned the police so that he could dispose of two guns (an AK–47 and a shotgun), he intentionally attempted to withhold two other firearms from the police on that occasion.

*Influence of Extreme Mental or Emotional Disturbance.* Defendant argues that the court did not give enough weight to the mitigating circumstance that he "was under the influence of extreme mental or emotional disturbance when the murder was committed." Defendant contends that the trial court placed insufficient weight on the mitigating circumstance that he was suffering from Post–Traumatic Stress Disorder. *See* Appellant's Br. at 25. In particular, he contends that Post–Traumatic Stress Disorder impaired his ability to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

During the sentencing hearing, Defendant offered testimony to show that he was severely mentally or emotionally disturbed at the time of the murder. Pamela Porter testified that Defendant was abused as a child and that his abuse contributed to a feeling of insecurity. According to Porter, Defendant felt alienated throughout his childhood, especially because nobody intervened on his behalf. At the time of the murder, Defendant again felt unsafe, this time because of local gang activity. Porter testified that Defendant's fear from the gang activity in the area set off "emotional triggers ... that related back to his childhood." Specifically, Defendant had feelings of "impending doom," and a desire to protect himself and one of his juvenile accomplices, Clayton Holmes.

Dr. John P. Wilson, a specialist in post-traumatic stress disorders testified that Defendant was suffering from Post–Traumatic Stress Syndrome. Dr. Wilson testified that Defendant underwent a psycho-biological change as a response to childhood abuse. According to Dr. Wilson, Defendant "suffere[d] from the effects of his childhood abuse that take[s] the form of post-traumatic stress disorder, anxiety disorder and other features that go with that, which [Dr. Wilson] would include as depression and also personality alterations."

Dr. Wilson also testified that Defendant felt that he and Clayton were in danger from a gang. Due to Defendant's psychological disorders, Defendant felt the need to protect himself and Clayton. Defendant sought out help from authorities to no avail and finally decided to take action himself. Dr. Wilson testified that Defendant might have shot the clerk because, whether or not the clerk was reaching for the gun, Defendant may have perceived that the clerk was going for his gun.

The trial court found that the mitigating circumstance that Defendant was under the influence of extreme mental or emotional disturbance (in particular, Post–Traumatic Stress Disorder) when the murder was committed did exist. The trial

court placed "some, but less than significant, weight" on it. We find the record supports the trial court's conclusion. The trial court considered the evidence of Defendant's attachment to Holmes, his feelings of insecurity, and his perception that society had failed to protect him. The trial court concluded:

> [T]his mitigating circumstance does exist and the court gives it some weight ..., but less than significant weight because there was no evidence that Defendant's Post–Traumatic Stress Disorder in any way prevented him from knowing right from wrong, or prevented him from making choices about his conduct, or justified or excused the act of intentionally killing another human being.

(R. at 518.) The record indicates that the trial court carefully scrutinized and evaluated the psychological evidence. The psychological evidence presented by Defendant does suggest that his traumatic childhood contributed to a heightened feeling that he needed to protect himself and Clayton. This could explain Defendant's decision to rob a gun store. Defendant's psychological disorder is less convincing as a mitigating circumstance in respect of his shooting Stapleton multiple times with no provocation. We find the trial court's analysis supported by the record. Defendant shot an unarmed man in the course of a robbery and, according to Defendant's own witnesses, he knew right from wrong. The claim that he shot Stapleton as a result of Post Traumatic Stress Disorder or of feelings of insecurity caused by a troubled childhood seems highly attenuated.

■ *Victim Contribution to the Crime.* Defendant argues that the court abused its discretion by failing to find as a mitigating circumstance that the victim contributed to the crime. Defendant directs this Court to his own statements indicating that at the time of the shooting, he thought Stapleton was reaching for a gun. *See* Appellant's Br. at 20. Even if this were so, it would not constitute a circumstance of a victim contributing to the crime. As such, we find the record supports the trial court's finding that Stapleton did not contribute to the crime. Furthermore, during the sentencing hearing, one of Defendant's accomplices testified that the victim had his hands up when Defendant shot him. And Defendant's sentencing memorandum concedes that "[n]one of the evidence before the court gives rise to this mitigating circumstance." (R. at 494.)

*Domination of another.* Defendant argues as a mitigating circumstance that he was acting under the domination of another person. He contends that the trial court "failed to consider the ... the relationship between" himself and one of his juvenile accomplices, Clayton Holmes. The trial court considered this argument, finding:

> Defendant argues that the systematic abuse perpetrated upon him throughout his childhood severely retarded his emotional maturity such that he had the maturity and reasoning of his teen-age co-defendants. He further asserts that because he perceived his "adopted" brother, Clayton Holmes, was at risk and that Clayton Holmes was the one more interested in the robbery, that somehow Defendant was acting in some degree under the domination and effect of 'his relationship with Clayton Holmes.'

(R. at 516.) (quotations in original) The trial court concluded that "there was no *credible* evidence presented that it was Clayton Holmes who instigated and planned the robbery and there was no *credible* evidence that Defendant was acting under the substantial domination of Clayton Holmes." (R. at 517) (emphases

in original.). The record supports the trial court's finding.

*Conclusion*

We express our appreciation for the trial court's careful and complete sentencing order. Such orders facilitate appellate review. We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.