**Michael HIGHBAUGH, Appellant (Defendant),**

v.

**STATE of Indiana, Appellee (Plaintiff).**

**No. 49S00–0008–CR–466.**

Supreme Court of Indiana.

Aug. 15, 2002.

Kathleen M. Sweeney, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

Michael Highbaugh pleaded guilty to one count of murder and two counts of attempted murder. The trial court sentenced him to life without parole for murder and an aggregate, consecutive term of 100 years for the attempted murders. Highbaugh's central challenges in this appeal focus on his sentence. We affirm.

## Facts and Procedural History

On the evening of December 11, 1997, David Hairston was at his home in Indianapolis, as were twenty-year-old Khalalah and fifteen-year-old Michael. When the doorbell rang, Khalalah answered and observed two men, one of whom was wearing a police uniform. She also observed a police car. The two men entered the foyer uninvited and requested to search Hairston's home, indicating that other officers were en route with a warrant. Hairston refused to let the men search his home until the warrant arrived and told them to wait outside. When they refused, Hairston demanded their names and badge numbers. The uniformed officer stated that his name was "Thompson." Hairston asked "Thompson" where his name badge was, to which the officer replied he was not wearing his badge. Hairston then brushed aside the officer's coat and saw a nametag that read "Powell."

The man wearing civilian clothing (later identified as Highbaugh) then pulled out a gun and put it to Hairston's head. After Hairston refused Highbaugh's demands to lie down on the floor, Highbaugh shot him in the head. He died as a result.

In the meantime, Khalalah and Michael ran from the foyer into the kitchen. Highbaugh chased them and shot Michael in the head. The resulting wound was not fatal, and Michael lay motionless pretending to be dead. Highbaugh then placed the barrel of the gun against Khalalah's head and pulled the trigger. When it misfired, Highbaugh grabbed a knife and stabbed Khalalah in the neck approximately ten times. She survived.

While motionless on the kitchen floor, Michael saw Powell run to the back of the house. After several minutes, he saw Powell run out the door carrying several bags.

The State charged Highbaugh with murder, felony murder, two counts of attempted murder, robbery, and carrying a handgun without a license. The State also alleged that Highbaugh was an habitual offender and sought the death penalty. In exchange for Highbaugh's guilty plea for murder and two counts of attempted murder, the State dropped the remaining charges. The plea agreement provided a sentencing range of sixty-five years to life without parole, to be decided by the trial

court. In addition to the life sentence and the term of years for attempted murder, the court later sentenced Highbaugh to a concurrent term of six months after he was found in contempt of court.[1]

## I. Necessary Proof for Life Without Parole

 Highbaugh first challenges the sufficiency of the evidence to support his life sentence for the murder of Hairston, arguing that the State failed to prove that he committed an intentional killing during the commission of a robbery. Highbaugh specifically argues that the State failed to establish that any property of value was taken and did not prove that property was taken from the person or presence of Hairston. A trial court may sentence a defendant to life without parole when the State has proven an aggravating circumstance specified in the death penalty statute beyond a reasonable doubt. Ind.Code Ann. § 35–50–2–9(b) (West 2000); *Greer v. State*, 749 N.E.2d 545, 549 (Ind.2001).[2]

The State proved that Highbaugh took property of value. The charging information stated that Highbaugh took "bags and contents" from Hairston's home. (R. at 108.) Michael testified that when Highbaugh and Powell first arrived at Hairston's house, both were empty handed. Although Michael was lying on the kitchen floor playing dead, he saw Powell leave the house with several bags, one of which contained marijuana. This was sufficient evidence that property of value was taken.

*See Ortiz v. State*, 716 N.E.2d 345, 351 (Ind.1999) (marijuana taken during robbery).

 Highbaugh also argues that the items taken were not taken from Hairston's person or presence. Moreover, because Hairston apparently was buying the home on contract with another person, Highbaugh asserts "it is unknown whether Hairston had sole control of the premises or even personally possessed the unrecovered and unidentified items." (Appellant's Br. at 15.) The evidence leads us to conclude otherwise.

 A sufficiency challenge will not prevail simply because the murder and the taking of property occurred in different rooms. *See Ortiz*, 716 N.E.2d at 352. A perpetrator still commits robbery when the property seized is not owned by the victim, but is merely under the personal protection of the victim. *Paul v. State*, 612 N.E.2d 1060, 1062 (Ind.1993) (upholding robbery conviction when defendant took cigarettes from store after fatally shooting employee in charge).

As we noted above, Highbaugh and Powell were empty-handed when they arrived at Hairston's. After shooting and stabbing the victims, they left Hairston's house with packaged marijuana and other bags. Later, while investigating the crime scene, police found an ashtray full of loose marijuana in plain view in the basement where Hairston was immediately prior to the shooting. *See Henderson v. State*, 715

---

1. Powell was charged with murder, felony murder, two counts of attempted murder, and robbery. The State also sought the death penalty, but later amended its complaint and sought life without parole. After a jury trial, Powell was convicted of felony murder and acquitted of the remaining charges. The trial court thereafter sentenced Powell to sixty-five years imprisonment. (Supp. R. at 35–36.)

2. To sentence a defendant to life without parole, the trial court must complete two additional steps. Along with finding that the State proved the statutory aggravator beyond a reasonable doubt, the trial court must find that the aggravating circumstances outweigh the mitigating circumstances. *Greer*, 749 N.E.2d at 550. Lastly, the trial court must make a record of the reasons supporting the sentence it imposes. *Id.* Highbaugh does not assert a challenge relating to these steps.

N.E.2d 833, 835 (Ind.1999) (constructive possession may be found when items are in plain view of a person because the person has the ability to exercise dominion and control over the items). Police also found packaging equipment, scales, and other paraphernalia in plain view that would indicate that drugs were dealt from the home. The marijuana taken from the home was either possessed by Hairston or in his personal protection. The evidence is sufficient to support the statutory aggravator.

## II. Claimed Mitigators

Highbaugh next contends that the trial court wrongfully rejected proffered mitigators, failed to give enough weight to recognized mitigators, and did not properly articulate how it weighed the recognized mitigators against the lone aggravator. He asks us to vacate the sentence of life without parole and sentence him to a term of years.

Highbaugh's father testified on his behalf, as did a psychotherapist. Both testified about how Highbaugh's childhood may have contributed to his drug use and this crime.

The trial court recognized several mitigating circumstances: Highbaugh came from a dysfunctional family whose father was involved in drugs and committed acts of domestic abuse; Highbaugh maintained steady employment during periods of his life; Highbaugh had a loving relationship with his wife and children; Highbaugh surrendered himself to police and did not resist arrest; and Highbaugh accepted responsibility, in part, by pleading guilty to some of the crimes. (Supp. R. at 49–50.)

Highbaugh offered other mitigating circumstances that the court rejected. These circumstances included: (1) Hairston facilitated the offense; (2) Highbaugh was under the control of Powell; (3) Highbaugh's sentence for life without parole is not pro-portional to Powell's sentence of sixty-five years; and (4) Powell was found not guilty of robbery. (*Id.*)

■■■ A trial court is not obligated to find a circumstance to be mitigating simply because the circumstance is proffered by the defendant. *Spears v. State,* 735 N.E.2d 1161, 1167 (Ind.2000), *reh'g denied.* On appeal, a defendant must show that the mitigating circumstance advanced is both significant and clearly supported by the record. *Id.* Although a finding of mitigating factors is within the discretion of a trial court, a trial court is not obligated to weigh or credit the mitigating factors as the defendant requests. *Georgopulos v. State,* 735 N.E.2d 1138, 1145 (Ind.2000). Only when a trial court fails to find a mitigator that the record clearly supports do we reasonably believe the trial court improperly overlooked a mitigator. *Id.*

■■■ Highbaugh claims that because Hairston was a drug dealer, he implicitly consented to the risks of the trade, including death. The trial court noted that Hairston did nothing to facilitate his own murder. In fact, Hairston was in the basement of his home when Highbaugh and Powell arrived. (R. at 1270.) The trial court did not abuse its discretion in rejecting this proposed mitigator.

■■■ The trial court also did not abuse its discretion when it declined to find that Highbaugh was under the substantial control of Powell. Highbaugh unquestionably had an accomplice, but he was the major participant in these crimes. In light of the fact that Highbaugh fatally shot Hairston, shot Michael, and stabbed Khalalah without direction or help from his accomplice, there was no abuse of discretion to reject this a mitigating circumstance.

■■■ As for Highbaugh's proffered mitigators that his sentence is not propor-

tional to Powell's and that Powell was found not guilty of robbery, the court did not abuse its discretion in rejecting these. First, a constitutional proportionality analysis does not require a court to compare the sentence of a particular crime to others convicted of the same or similar crimes. *Willoughby v. State*, 660 N.E.2d 570, 584 (Ind.1996).

Moreover, Highbaugh was the principal actor in the murder of Hairston and the attempted murders of Michael and Khalalah. Highbaugh shot Hairston and tried to murder Michael and Khalalah while Powell stood by saying nothing. The court properly gave Highbaugh a stiffer sentence than his accomplice. Finally, given that the State proved the statutory aggravator of intentional killing during the course of a robbery, there was no abuse of discretion when the trial court ignored the fact that Powell was acquitted of robbery.

 As for Highbaugh's claim that the trial court is required to articulate the weight given to each mitigator, this Court recently rejected such a requirement in *Hollen v. State*, 761 N.E.2d 398 (Ind.2002). Although we acknowledged in *Hollen* that trial courts facilitate a more thorough appellate review by delineating how much weight to give to a specific aggravating or mitigating circumstance, we nonetheless held that a trial court is not required to assign specific weight to each aggravator and mitigator. *Id.* at 402. Accordingly, we find no error.

### III. Was Life Manifestly Unreasonable?

In the same vein, Highbaugh claims that his life sentence is manifestly unreasonable. He argues that had the court given full weight to the recognized mitigators and to those mitigators that Highbaugh identifies as erroneously overlooked, a lesser sentence would have been imposed.

 A life sentence imposed on a person who murders one person and attempts to kill two others is not manifestly unreasonable, given the state of the mitigators described above.

### IV. The Contempt Finding

 Highbaugh lastly claims the court erred when it found him in contempt. Highbaugh argues that because he still possessed his Fifth Amendment right to remain silent so as to not incriminate himself, he could not be ordered to provide testimony in Powell's case. We reject his blanket assertion of the privilege against self-incrimination.

Highbaugh pled guilty to one count of murder and two counts of attempted murder. In exchange, the State declined to prosecute Highbaugh for robbery, felony murder, and carrying a handgun without a license. The State also dismissed the habitual offender information. The plea agreement contained an additional provision requiring Highbaugh "to appear and be interviewed to give sworn and unsworn statements or testimony as required." (R. at 1187.) The guilty plea was filed and accepted by the trial court on February 4, 2000. On March 20th, Powell's attorney deposed Highbaugh in preparation for Powell's separate trial. (Supp. R. at 20–24.) At this deposition, Highbaugh declined to answer any question beyond his name, date of birth, and place of residence. (*Id.*)

Powell's attorney moved that Highbaugh be held in contempt for his refusal to answer any questions. The court held a hearing on the motion two days after Highbaugh was sentenced. The court ordered Highbaugh to answer "any and all questions concerning your knowledge of this matter, and if you refuse . . . you could be found in contempt." (R. at 1385.)

Highbaugh again declined to answer any questions and indicated that he would be appealing the imposition of a life sentence. (R. at 1383.) The court ruled that Highbaugh did not have a Fifth Amendment privilege, found him in contempt, and sentenced him to a term of six months to be served concurrent with his life sentence.

The privilege against self-incrimination contained in the Fifth Amendment exists up to the point where there can be no further incrimination. *Mitchell v. United States,* 526 U.S. 314, 326, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999). The possibility of further incrimination ceases when the sentence has been fixed and the judgment of conviction has become final. *Id.* The privilege against self-incrimination also is lost when counts of an indictment are dismissed as a part of a plea agreement. *United States v. Smith,* 245 F.3d 538, 543 (6th Cir.2001). The reasoning is that "since promises to dismiss charges as part of a plea agreement are binding on the Government, a witness may not be exposed to prosecution on those charges, and the need for the privilege is lost." *Id.* (quoting *United States v. Pardo,* 636 F.2d 535, 543 (D.C.Cir.1980)). Nevertheless, a defendant or witness does not lose the privilege against self-incrimination on crimes that are not a part of the plea agreement. *Id.*

Although Highbaugh retained his privilege with regard to some things, his refusal to answer any questions outside of name, date of birth, and place of residence transcended his Fifth Amendment privilege. Because Highbaugh expressed his intent to appeal his life sentence, he may have retained his privilege with regard to the statutory aggravator, but the privilege only extended to questions that could incriminate him on that matter. Highbaugh could have answered any number of questions without further incriminating himself.

Because he refused to answer any questions, the trial court could properly find him in contempt.

### Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, and RUCKER, JJ., concur.

BOEHM, J., concurs in part and dissents in part with separate opinion.

BOEHM, Justice, concurring in part, dissenting in part.

I concur in parts I, II, and III of the majority opinion, but dissent as to part IV of the opinion. As the majority points out, in *Mitchell v. United States,* 526 U.S. 314, 326, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999), the United States Supreme Court held that the privilege against self-incrimination contained in the Fifth Amendment exists until the possibility of further incrimination ceases, i.e., when "the sentence has been fixed and the judgment of conviction has become final." The Supreme Court in *Mitchell* did not define the point at which a judgment of conviction becomes final for Fifth Amendment privilege purposes, but there is a substantial body of law from other courts holding that the privilege continues pending an appeal. *See United States v. Duchi,* 944 F.2d 391, 394 (8th Cir.1991) ("Fifth Amendment right not to testify concerning transactions for which one has been convicted continues until the time for appeal has expired or until the conviction has been affirmed on appeal"); *Mills v. United States,* 281 F.2d 736, 741 (4th Cir.1960); *Ellison v. State,* 310 Md. 244, 528 A.2d 1271, 1278 (1987); *State v. Kaquatosh,* 600 N.W.2d 153, 158 (Minn.Ct.App.1999); *People v. Bell,* 127 Misc.2d 43, 485 N.Y.S.2d 416, 420 (N.Y.Sup.Ct.1985); *Knight v. Maybee,* 44

Misc.2d 152, 253 N.Y.S.2d 59, 63 (N.Y.Sup. Ct.1964).

In this case, Highbaugh had the right to appeal his life sentence, and indeed had expressed his intent to do so. Accordingly, at the time of his contempt hearing, Highbaugh retained his Fifth Amendment privilege with regard to the statutory aggravating circumstance that he committed an intentional killing during the commission of a robbery that was essential for life without parole. I agree with the majority that this privilege did not permit Highbaugh to refuse to answer all questions asked him in Powell's case, but it did extend to any questions that could establish the statutory aggravator. I do not agree, however, that "the trial court could properly find him in contempt." Because Highbaugh retained his Fifth Amendment privilege as to the aggravator, I believe the court erred when it found that Highbaugh's "[Fifth] Amendment rights no longer exist[ed]" and ordered him to answer "any and all questions concerning [his] knowledge of this matter." This overly broad directive, based on an incorrect assumption that the Fifth Amendment right "no longer exist[ed]," violated Highbaugh's Fifth Amendment right against self-incrimination. I would reverse the trial court's finding of contempt and vacate Highbaugh's concurrent term of six months imprisonment.