## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 24 2019, 8:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT, PRO SE

Michael Highbaugh
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael A. Highbaugh, *Appellant-Respondent,* v. State of Indiana, *Appellee-Petitioner.* | April 24, 2019 Court of Appeals Case No. 49A02-1710-PC-2326 Appeal from the Marion Superior Court The Honorable Mark D. Stoner, Judge The Honorable Jeffrey L. Marchal, Magistrate Trial Court Cause No. 49G06-9712-PC-183229 |

**Pyle, Judge.**

# Statement of the Case

Michael Highbaugh ("Highbaugh") appeals the denial of his petition for post-conviction relief. Finding no error, we affirm the post-conviction court's denial of Highbaugh's petition.

We affirm.

# Issue

The sole issue for our review is whether the post-conviction court erred in denying Highbaugh's petition for post-conviction relief.

# Facts

The underlying facts in this case, taken from the Indiana Supreme Court's opinion in Highbaugh's direct appeal, are as follows:

> On the evening of December 11, 1997, David Hairston was at his home in Indianapolis, as were twenty-year-old Khalalah and fifteen-year-old Michael. When the doorbell rang, Khalalah answered and observed two men, one of whom was wearing a police uniform. She also observed a police car. The two men entered the foyer uninvited and requested to search Hairston's home, indicating that other officers were en route with a warrant. Hairston refused to let the men search his home until the warrant arrived and told them to wait outside. When they refused, Hairston demanded their names and badge numbers. The uniformed officer stated that his name was "Thompson." Hairston asked "Thompson" where his name badge was, to which the officer replied he was not wearing his badge. Hairston then brushed aside the officer's coat and saw a nametag that read "Powell."

The man wearing civilian clothing (later identified as Highbaugh) then pulled out a gun and put it to Hairston's head. After Hairston refused Highbaugh's demands to lie down on the floor, Highbaugh shot him in the head. He died as a result.

In the meantime, Khalalah and Michael ran from the foyer into the kitchen. Highbaugh chased them and shot Michael in the head. The resulting wound was not fatal, and Michael lay motionless pretending to be dead. Highbaugh then placed the barrel of the gun against Khalalah's head and pulled the trigger. When it misfired, Highbaugh grabbed a knife and stabbed Khalalah in the neck approximately ten times. She survived.

While motionless on the kitchen floor, Michael saw [Myron] Powell [("Powell")] run to the back of the house. After several minutes, he saw Powell run out the door carrying several bags.

*Highbaugh v. State*, 773 N.E.2d 247, 250 (Ind. 2002).

[4] In December 1997, the State charged Highbaugh with murder, felony murder, two counts of attempted murder, robbery, and carrying a handgun without a license. In early 1998, the State filed an habitual offender enhancement and a request for the death penalty. Two attorneys were appointed to represent Highbaugh.

[5] In February 2000, Highbaugh and the State entered into a plea agreement, which provided that, in exchange for Highbaugh's guilty plea to murder and two counts of attempted murder, the State would drop the remaining charges and the habitual offender enhancement. Highbaugh also promised to cooperate fully and truthfully with the State in the prosecution of his co-defendant, Powell. The agreement further provided that if Highbaugh failed to cooperate

in Powell's prosecution, the State reserved the right to withdraw from the agreement. In addition, the plea agreement provided a sentencing range of sixty-five years to life without parole, which would be decided by the trial court after a sentencing hearing.

[6] At the guilty plea hearing held that same day, Highbaugh told the trial court that he understood that he was pleading guilty to murdering Hairston and attempting to murder Khalalah and Michael and that he was admitting the truth and the facts of the murder and attempted murder charges. He also stated that he understood that the remaining charges would be dismissed and that after a sentencing hearing, the trial court would sentence him within a range from sixty-five years to life without parole. The trial court also reviewed the provision of the agreement regarding Highbaugh's cooperation with the State in its case against Powell, which Highbaugh also said that he understood. Highbaugh assured the trial court that he had reviewed the plea agreement with his attorneys before he had signed and initialed it, that he had had sufficient time to discuss his case with them, and that he was satisfied with their performance on his behalf.

[7] The trial court explained to Highbaugh that his trial was scheduled to begin in three days. The trial court also explained Highbaugh's sentencing exposure to a term of years, to life without parole, or to death if he was tried and convicted at trial. Highbaugh told the trial court that he understood these matters and had had sufficient time to discuss them with his attorneys before pleading guilty.

[8]     Also at the guilty plea hearing, the trial court asked Highbaugh's attorneys if, based on their discussions with Highbaugh, they had had the opportunity to discuss the possible penalties that he faced in connection with the case and under the terms of the plea agreement, and they confirmed that they had. The trial court also asked the attorneys if they believed that he understood all rights and possible sentences in connection with the case, and they responded that they did. Both attorneys also told the trial court that they would have been prepared to try the case three days later.

[9]     Thereafter, the State set forth the following factual basis for the charges:

> [H]ad this matter gone to trial, the State would have called Khalalah Ector . . . who would have testified that on December 11th of 1997 she was at a home located at 4307 North Sunshine Avenue in Indianapolis, Marion County, Indiana. Ms. Ector would testify that she believed that home to be occupied by a person known to her as David C. Hairston . . . Ms. Ector would testify that at approximately 10:30 on December 11th of 1997 two men appeared at the door of that home, the door which she answered. One of those men was in full police uniform and she later identified that person as Myron Powell. The other man who was at that door, Ms. Ector later identified as Michael Highbaugh. Ms. Ector would testify that the two men engaged in conversation with David Hairston, who was the occupant of the home, and at some point during the conversation the Defendant, Michael Highbaugh, produced a handgun, firing two shots at David Hairston. Medical testimony would show that those two gunshots killed David Hairston. Ms. Ector would further testify that she observed the Defendant, Michael Highbaugh, fire a shot at her cousin, Michael Ector, who was also at that home and that shot did strike Michael Ector. Ms. Ector would also testify that

the Defendant, Michael Highbaugh, grabbed a knife from the kitchen and stabbed her about the neck and throat area.

(PCR App. Vol. 2 at 66-67). When the State completed the factual basis, the trial court asked Highbaugh if the factual basis was true, and Highbaugh responded that it was.

[10] At the end of the guilty plea hearing, the trial court concluded that Highbaugh's guilty plea had been freely and voluntarily given with a full understanding of the charges and penalties. The trial court accepted Highbaugh's plea and ordered the preparation of a presentence report. The trial court and the parties then discussed setting Highbaugh's sentencing hearing after Powell's scheduled trial.

[11] In March 2000, when Highbaugh refused to answer questions during a deposition taken by Powell's counsel, counsel filed a motion to hold Highbaugh in contempt. The following week, Highbaugh refused to participate in the preparation of his presentence investigation report and told the officer assigned to complete the report that "he was going to reject the [p]lea [a]greement 'because [he] didn't do the crime.'" (Supp. Tr. Vol. 1 at 9). Highbaugh again refused to participate in a rescheduled meeting with the officer in April 2000.

[12] Also in April 2000, Highbaugh filed a pro se motion to withdraw his guilty plea wherein he stated that he had had time to reflect on the guilty plea and wanted to withdraw it and go to trial on the original charges. Highbaugh specifically alleged that "he [had been] forced and lied to in order to take the plea

agreement" and that his attorneys had "used family to influence [the] signing of [the] plea." (Tr. Vol. 5 at 1219). He further alleged that he felt that he was "not being properly represented by his counsel" and that there had been "prejudice and bias acts committed against him in the court room." (Tr. Vol. 5 at 1219). Highbaugh listed no specific examples in support of his allegations.

[13] The trial court held a sentencing hearing later that month. At the beginning of the hearing, the trial court addressed Highbaugh's motion to withdraw his guilty plea and asked Highbaugh to "tell [it] whatever [he] want[ed] [it] to hear regarding [his] motion." (Tr. Vol 6 at 1258-59). Highbaugh responded that he had been "pressured and coerced by [his] attorneys to sign the plea agreement" and he had "lied" to the trial court because he had been told that "when the Presentence people come that I could tell them that I didn't do it[.]" (Tr. Vol. 6 at 1259). The trial court then asked Highbaugh's attorneys whether they believed that Highbaugh had "made a knowing and voluntary waiver of his rights when he pled guilty in this case." (Tr. Vol. 6 at 1260). Both attorneys responded affirmatively. The trial court concluded that there was "no doubt in [its] mind . . . [that Highbaugh] knew exactly what [he was] doing . . . when [he] entered into this plea agreement," and denied Highbaugh's petition to withdraw his guilty plea. (Tr. Vol. 6 at 1260).

[14] The next stage of the sentencing hearing focused on the statutory aggravator that Hairston's murder was committed during the commission of a robbery. Specifically, at this point, one of Highbaugh's attorneys "move[d] to exclude any evidence . . . that [was] not related to the statutory aggravator, that being an

intentional killing during the commission of a [r]obbery." (Tr. Vol. 6 at 1261). The trial court granted the motion and heard testimony that after the shootings, Powell ran out of the apartment with a zip-lock bag of marijuana and a brown grocery bag. Following the testimony, the trial court concluded that the State had proved beyond a reasonable doubt that Highbaugh had killed Hairston during the commission of a robbery. The trial court sentenced Highbaugh to life without the possibility of parole for the murder conviction.

[15] The final stage of the sentencing hearing focused on the sentences for the attempted murder convictions. After hearing testimony, the trial court found the following aggravating factors: (1) Highbaugh's prior criminal history, which included three felonies; (2) his prior attempts at rehabilitation had been unsuccessful; (3) Highbaugh's probation has been revoked in the past; (4) Highbaugh was in need of correctional or rehabilitative treatment that could best be provided by commitment to a penal facility; (5) the facts and circumstances of the case, including the attempt to eliminate three witnesses, the commission of a robbery during the attempted killings, and the fact that the two attempted murder victims suffered from protracted impairment. The trial court also found the following two mitigating factors: (1) Highbaugh had the support of family and friends; and (2) Highbaugh was emotionally and physically abused as a child. "Weighing these matters out," the trial court sentenced Highbaugh to fifty years for each attempted murder conviction and ordered the sentences to run consecutive to each other and with the life without parole sentence. (Tr. Vol. 6 at 1375).

[16] Two days after the sentencing hearing, the trial court held a hearing on Powell's motion to hold Highbaugh in contempt. Following the hearing, the trial court ordered Highbaugh to answer Powell's questions and told him that if he refused to do so, he could be found in contempt and sentenced for up to six months in jail and fined up to $500. When Highbaugh told the trial court that he was going to remain silent, the trial court found him to be in contempt, sentenced him to six months in jail concurrent with the sentence he was serving, and fined him $500.

[17] Highbaugh appealed his sentence and the finding of contempt. He argued that the trial court had erred by ordering the sentences for his attempted murder convictions to run consecutive to his life without parole sentence, and that the trial court's sentencing order was deficient because it had not specified and articulated the balancing of aggravating and mitigating circumstances. Before the Indiana Supreme Court had ruled on these issues, the trial court issued an amended sentencing order specifying that Highbaugh's sentences for attempted murder would be served consecutively to each other but concurrently with the life without parole sentence. The Indiana Supreme Court subsequently issued an order noting that the trial court had "corrected the first problem . . . but [had taken] no action with regard to the second problem: the specificity of the sentencing order[.]" (P.C.R. App Vol. 2 at 207). The Court remanded Highbaugh's case to the trial court for entry of a new sentencing order, which could be appealed with supplemental briefs. In June 2001, the trial court issued more specific findings and conclusions on the life without parole sentence.

[18] In his direct appeal, Highbaugh raised four issues. He first argued that there was insufficient evidence to support his life without parole sentence for the murder of Hairston. Specifically, he contended that the State had failed to prove that he had committed an intentional killing during the commission of a robbery. According to Highbaugh, the State had failed to establish that any property of value had been taken and had failed to prove that any property was taken from the presence of Hairston. The Indiana Supreme Court disagreed, pointed out that Highbaugh and Powell had left Hairston's house with packaged marijuana and other bags, and concluded that there was sufficient evidence to support the statutory aggravator. *Highbaugh*, 773 N.E.2d at 251.

[19] Secondly, Highbaugh contended on appeal that the trial court had wrongfully rejected the following proffered mitigators: (1) Hairston facilitated the offense; (2) Highbaugh was under Powell's control; (3) Highbaugh's life without parole sentence was not proportional to Powell's sixty-five year sentence; and (4) Powell was not found guilty of robbery. Third, he argued that his life sentence was manifestly unreasonable. The Indiana Supreme Court concluded that the trial court did not abuse its discretion in rejecting these mitigators and that Highbaugh's sentence was not manifestly unreasonable. *Id.* at 252-53.

[20] Lastly, Highbaugh argued that the trial court erred when it found him in contempt for refusing to answer questions from Powell's counsel. Highbaugh specifically argued that he could not be ordered to provide testimony in Powell's case because he possessed a Fifth Amendment right to remain silent so as not to incriminate himself. The Indiana Supreme Court concluded that

because Highbaugh had expressed his intent to appeal his life sentence, he may have retained his privilege with regard to the statutory aggravator. *Id.* at 254. However, the privilege would have extended only to questions that could incriminate him on that matter, and Highbaugh could have answered any number of questions without further incriminating himself. *Id.* Because he refused to answer any questions, the trial court could properly find him in contempt. *Id.* The Indiana Supreme Court affirmed both Highbaugh's convictions and sentence.

[21] Highbaugh filed a petition for post-conviction relief in February 2003 and later withdrew it. He filed a second petition in May 2016, and amended it in June 2016 and in March 2017. The post-conviction court held a hearing on Highbaugh's amended petition in May 2017. Highbaugh did not testify or call any witnesses. He told the post-conviction court that he just "need[ed] to enter some things on the record." (P.-C.R. Tr. at 3). The post-conviction court asked Highbaugh if he was going to "pursue a Petition for Post-Conviction Relief alleging ineffective assistance of counsel without calling [his] counsel." (P.-C.R. Tr. at 7). Highbaugh responded that he was because "everything that [he was] alleging [was] on the record." (P.-C.R. Tr. at 7).

[22] In September 2017, the post-conviction court issued a detailed fourteen-page order denying Highbaugh's petition. Highbaugh now appeals.

# Decision

[23] At the outset, we note that Highbaugh proceeds pro se. A litigant who proceeds pro se is held to the same rules of procedure that trained counsel is bound to follow. *Smith v. Donahue*, 907 N.E.2d 553, 555 (Ind. Ct. App. 2009), *trans. denied*, *cert. dismissed*. One risk a litigant takes when he proceeds pro se is that he will not know how to accomplish all the things an attorney would know how to accomplish. *Id.* When a party elects to represent himself, there is no reason for us to indulge in any benevolent presumption on his behalf or to waive any rule for the orderly and proper conduct of his appeal. *Foley v. Mannor*, 844 N.E.2d 494, 502 (Ind. Ct. App. 2006). We now turn to the merits of Highbaugh's argument that the post-conviction court erred in denying his petition.

[24] A petitioner who has been denied post-conviction relief faces a rigorous standard of review. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001). As such, the petitioner must convince the court on review that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Id.* at 170. Stated differently, this Court will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Id.* Further, the reviewing court accepts the post-conviction court's findings of fact unless clearly erroneous. *Id.*

## 1. Insufficient Factual Basis

Highbaugh first argues that the post-conviction court erred in denying his petition because there was an insufficient factual basis to support his plea of guilty to murder. Specifically, he contends that the factual basis should have included facts regarding the commission of a robbery.

A trial court may not accept a plea of guilty unless it determines that a sufficient factual basis exists to support the plea. *Dewitt*, 755 N.E.2d at 172 (citing IND. CODE § 35-35-1-3). A factual basis exists where there is evidence about the elements of the crime from which a trial court could reasonably conclude that the defendant is guilty. *Dewitt* at 172. The factual basis of a guilty plea need not be established beyond a reasonable doubt. *Id.* Rather, relatively minimal evidence can be adequate. *Id.* In addition, to be entitled to post-conviction relief, the defendant must prove that he was prejudiced by the lack of a factual basis. *Id.*

Here, our review of the charging information reveals that the State charged Highbaugh with murder for knowingly killing Hairston by shooting him with a handgun. At the guilty plea hearing, the factual basis provided that Highbaugh shot Hairston, and that Hairston died as a result of the gunshot. This is sufficient evidence for the trial court to reasonably conclude that Highbaugh was guilty of murder. To the extent that Highbaugh argues that the factual basis is insufficient because the "State made no mention of a commission of a robbery," he is mistaken. (Appellant's Br. at 19). The commission of a robbery

is not an element of murder.[1]  Rather, as the State correctly points out, the commission of a robbery during a murder is a statutory aggravating sentencing factor for the death penalty or a life without parole sentence.  *See* IND. CODE 35-50-2-9.  In Highbaugh's direct appeal, the Indiana Supreme Court found that there was sufficient evidence set forth in Highbaugh's sentencing hearing to support this statutory aggravating factor and Highbaugh's life without parole sentence.[2]

### 2.    Ineffective Assistance of Appellate Counsel

[28]    Highbaugh also argues that his appellate counsel was ineffective.  To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance.  *Mitchell v. State*, 946 N.E.2d 640, 643 (Ind. Ct. App. 2011), *trans. denied*.  Counsel's performance is deficient if it falls below an objective standard of reasonableness based on

---

[1] We note that commission of a robbery or another offense, is an element of felony murder, and this language was included in Highbaugh's felony murder charging information.  (Tr. Vol. 1 at 107) (alleging that Highbaugh shot Hairston while committing or attempting to commit a robbery).  However, the felony murder charge was dismissed pursuant to the terms of the plea agreement.

[2] Highbaugh also argues that: (1) his trial counsel was ineffective for allowing the trial court to accept his guilty plea that was not supported by a factual basis; and (2) his plea was unknowingly, involuntary, and unintelligent because counsel failed to tell him that the commission of a robbery was an element of murder that the State had to prove.  These arguments fail because we have already determined that commission of a robbery is not an element of murder.

We further note that Highbaugh's cursory allegation that his guilty plea was not voluntary because his counsel did not advise him that he could receive an additional one-hundred years beyond the terms of his guilty plea.  This issue became moot before Highbaugh's direct appeal was decided when the trial court corrected its initial consecutive sentencing order and ordered the attempted murder convictions to run concurrently with the life without parole sentence.

prevailing professional norms. *Id.* To show prejudice, the petitioner must establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

[29] The standard of review for a claim of ineffective assistance of appellate counsel is the same as for trial counsel. *Id.* at 644. There are three ways in which appellate counsel may be considered ineffective: (1) when counsel's actions deny the defendant his right of appeal; (2) when counsel fails to raise issues that should have been raised on appeal; (3) when counsel fails to present claims adequately and effectively such that the defendant is in essentially the same position after appeal as he would be had counsel waived the issue. *Id.* To establish deficient performance for failing to raise an issue, the petitioner must show that the unraised issue was clearly stronger than the issues that were raised. *Id.*

[30] Here, Highbaugh argues that his appellate counsel failed to raise four issues that should have been raised in his direct appeal. He first argues that appellate counsel was ineffective for failing to argue that the trial court abused its discretion when it imposed "an additional hundred (100) years beyond his life without parole sentence[.]" (Highbaugh's Br. at 29). However, appellate counsel raised this issue on direct appeal, and the trial court corrected its error before the direct appeal was decided. This issue is therefore res judicata. *See Ben-Yisrayl v. State*, 738 N.E.2d 253, 259 (Ind. 2000) (explaining that when an

appellate court decides an issue on direct appeal, the doctrine of res judicata precludes its review in post-conviction proceedings).

[31] Highbaugh also argues that appellate counsel was ineffective for failing to challenge the denial of Highbaugh's motion to withdraw his guilty plea. Highbaugh appears to argue that his refusal to answer Powell's counsel's questions at the deposition was a breach of the plea agreement that required the trial court to vacate his guilty plea. Highbaugh has waived appellate review of this argument because his brief, conclusory argument is supported neither by citation to authority nor cogent argument. *See Smith v. State*, 822 N.E.2d 193, 202-03 (Ind. Ct. App. 2005) ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *trans. denied*. Waiver notwithstanding, we find no error. The plea agreement provided that the State reserved the right to withdraw from the agreement if Highbaugh failed to cooperate in Powell's prosecution. Nothing in the agreement required the trial court to vacate Highbaugh's guilty plea. Appellate counsel was not ineffective for failing to challenge the denial of Highbaugh's motion to withdraw his guilty plea.[3]

---

[3] Highbaugh also argues that appellate counsel was ineffective for failing to argue that the trial court erred in holding him in contempt for failure to answer Powell's counsel's questions where the terms of the plea agreement required the trial court to vacate the guilty plea. This argument fails because we have already determined that nothing in the plea agreement required the trial court to vacate the plea agreement.

[32] Highbaugh next argues that appellate counsel was ineffective because he failed to argue on appeal that the State failed to prove beyond a reasonable doubt the statutory sentencing aggravator of robbery for the purposes of his life without parole sentence. However, our review of Highbaugh's direct appeal reveals that appellate counsel raised this issue, and the Indiana Supreme Court concluded that there was sufficient evidence to support the aggravator. This issue is therefore res judicata. *See Ben-Yisrayl*, 738 N.E.2d at 259.

[33] Affirmed.

Najam, J., and Crone, J., concur.